In re PEREGRINE ENTERTAINMENT, LTD., The Peregrine Producers Group, Inc., Peregrine Film Distribution, Inc., National Peregrine Inc., and Peregrine–United Corporation, Debtors.

NATIONAL PEREGRINE, INC., a Utah corporation, successor by merger to American National Enterprises, Inc., Plaintiff–Appellant,

v.

CAPITOL FEDERAL SAVINGS AND LOAN ASSOCIATION OF DENVER, a Federal Savings and Loan Association, Defendant–Appellee.

No. CV 90–1083–AK.

Bankruptcy Nos. LA89–01991–LHF, LA89–02692–LHF, LA89–04868–LHF, LA89–01857–LHF and LA89–02693–LHF.

Adv. No. LA89–00358–LF.

United States District Court,
C.D. California.

June 28, 1990.

Stephan M. Ray, Stutman, Treister & Glatt, Gary O. Concoff, Mitchell, Silverberg & Knupp, Los Angeles, Cal., for plaintiff-appellant.

Bennett L. Silverman, Gregory M. Salvato, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant-appellee.

## OPINION AND ORDER REMANDING

KOZINSKI, Circuit Judge.*

This appeal from a decision of the bankruptcy court raises an issue never before confronted by a federal court in a published opinion: Is a security interest in a copyright perfected by an appropriate filing with the United States Copyright Office or by a UCC–1 financing statement filed with the relevant secretary of state?

### I

National Peregrine, Inc. (NPI) is a Chapter 11 debtor in possession whose principal assets are a library of copyrights, distribution rights and licenses to approximately 145 films, and accounts receivable arising from the licensing of these films to various programmers. NPI claims to have an outright assignment of some of the copyrights; as for the others, NPI claims it has an exclusive license to distribute in a certain territory, or for a certain period of time.[1]

In June 1985, Capitol Federal Savings and Loan Association of Denver (Cap Fed) extended to American National Enterprises, Inc., NPI's predecessor by merger, a six million dollar line of credit secured by what is now NPI's film library. Both the security agreement and the UCC–1 financing statements[2] filed by Cap Fed describe the collateral as "[a]ll inventory consisting of films and all accounts, contract rights, chattel paper, general intangibles, instru-

---

*\* Sitting by designation pursuant to 28 U.S.C. § 291(b) (1982).*

1. According to NPI, valid copyrights exist in all of the motion pictures in its library by virtue of either (1) originality and fixation with respect to the works created after January 1, 1978, the effective date of the Copyright Act of 1976, or (2) publication and notice with respect to films created prior to 1978, and, thus governed by the Copyright Act of 1909. *See* Brief of Appellants at 6 n. 6 (citing 17 U.S.C. § 10 (1909 Act); 17 U.S.C. §§ 102(a), 302(a) (1976 Act)). Cap Fed, however, contends that NPI failed to offer any proof in its motion for summary judgment that any of these works were protected under either Act. The court need not resolve this dispute, however. For purposes of presenting the legal issues raised by this appeal, it is sufficient if at least one of the films in NPI's library is the subject of a valid copyright. Cap Fed has stipulated that there is at least one such film, the unforgettable "Renegade Ninjas," starring Hiroki Matsukota, Kennosuke Yorozuya and Teruhiko Aoi, in what many consider to be their career performances. *See* Stipulation & Order re Film in NPI's Library Subject to Federal Copyright at 4.

2. All references are to the California version of the Uniform Commercial Code.

ments, equipment, and documents related to such inventory, now owned or hereafter acquired by the Debtor." [3]   Although Cap Fed filed its UCC–1 financing statements in California, Colorado and Utah,[4] it did not record its security interest in the United States Copyright Office.

NPI filed a voluntary petition for bankruptcy on January 30, 1989.   On April 6, 1989, NPI filed an amended complaint against Cap Fed, contending that the bank's security interest in the copyrights to the films in NPI's library and in the accounts receivable generated by their distribution were unperfected because Cap Fed failed to record its security interest with the Copyright Office.   NPI claimed that, as a debtor in possession, it had a judicial lien on all assets in the bankruptcy estate, including the copyrights and receivables. Armed with this lien, it sought to avoid, recover and preserve Cap Fed's supposedly unperfected security interest for the benefit of the estate.

The parties filed cross-motions for partial summary judgment on the question of whether Cap Fed had a valid security interest in the NPI film library.   The bankruptcy court held for Cap Fed.   *See* Memorandum of Decision re Motion for Partial Summary Adjudication (Nov. 14, 1989) [hereinafter "Memorandum of Decision"] and Order re Summary Adjudication of Issues (Dec. 18, 1989).   NPI appeals.

## II

### A.   *Where to File*

■   The Copyright Act provides that "[a]ny transfer of copyright ownership or other document pertaining to a copyright" may be recorded in the United States Copyright Office.   17 U.S.C. § 205(a); *see* Copyright Office Circular 12: Recordation of Transfers and Other Documents (reprinted in 1 Copyright L.Rep. (CCH) ¶ 15,015) [hereinafter "Circular 12"].[5]   A "transfer"

---

3.   The UCC–1 described the collateral as follows:
  All inventory consisting of films and all accounts, contract rights, chattel paper, *general intangibles*, instruments, equipment, and documents related to such inventory, now owned or hereafter acquired by the Debtor, including, but not limited to:
    (i) all accounts, contract rights, chattel paper, instruments, equipment, *general intangibles* and other obligations of any kind whether now owned or hereafter acquired arising out of or in connection with the sale or lease of the films, and all rights whether now or hereafter existing in and to all security agreements, leases, invoices, claims, instruments, notes, drafts, acceptances, and other contracts and documents securing or otherwise relating to any such accounts, contract rights, chattel paper, instruments, *general intangibles* or obligations and other documents or computer tapes or disks related to any of the above; and
    (ii) all proceeds of any and all of the foregoing property, including cash and noncash proceeds, and, to the extent not otherwise included, all payments under insurance (whether or not the Secured Party is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing property.
*See* Memorandum of Decision re Motion for Partial Summary Adjudication (Nov. 14, 1989) at 4 (emphasis added).   The security agreement described the collateral in nearly identical language.   *See id.* at 3.
  UCC § 9106 defines "general intangibles" as "any personal property (including things in ac-

tion) other than goods, accounts, chattel paper, documents, instruments, and money."   The official commentary to section 9106, adopted by numerous states (including California), specifically identifies "copyrights, trademarks and patents" as included in the definition of general intangibles.   *See United States v. Anderson,* 895 F.2d 641, 647 (9th Cir.1990) (Kozinski, J., dissenting) (although legislative history generally is a poor source of guidance for statutory interpretation, official commentaries are persuasive).

4.   Under UCC § 9103(3)(b), "[t]he law ... of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or nonperfection of the security interest" in a general intangible.   "A debtor shall be deemed located at the debtor's place of business ... [or] at the debtor's chief executive office if [it] has more than one place of business...."   U.S.C. § 9103(3)(d).   Because NPI is a Utah corporation that conducts much of its business in California, Cap Fed apparently deemed filing in both states prudent.   Presumably, Cap Fed filed in Colorado because its own headquarters are located in Denver.

5.   The parties have failed to make a distinction between pre–1978 copyrights, which generally are governed by the 1909 Act, and post–1978 copyrights governed by current law.   However, the distinction does not seem to matter in this context because post–1978 transfers of copyrights created under the 1909 Act are governed by the current Act's recording provisions, *see* 3

under the Act includes any "mortgage" or "hypothecation of a copyright," whether "in whole or in part" and "by any means of conveyance or by operation of law." 17 U.S.C. §§ 101, 201(d)(1); *see* 3 *Nimmer on Copyright* § 10.05[A], at 10–43—10–45 (1989). The terms "mortgage" and "hypothecation" include a pledge of property as security or collateral for a debt. *See Black's Law Dictionary* 669 (5th ed. 1979). In addition, the Copyright Office has defined a "document pertaining to a copyright" as one that

> has a direct or indirect relationship to the existence, scope, duration, or identification of a copyright, or to the ownership, division, allocation, licensing, transfer, or exercise of rights under a copyright. That relationship may be past, present, future, or potential.

37 C.F.R. § 201.4(a)(2); *see also* Compendium of Copyright Office Practices II ¶¶ 1602–1603 (identifying which documents the Copyright Office will accept for filing).

■■■ It is clear from the preceding that an agreement granting a creditor a security interest in a copyright may be recorded in the Copyright Office. *See* G. Gilmore, *Security Interests in Personal Property* § 17.3, at 545 (1965). Likewise, because a copyright entitles the holder to receive all income derived from the display of the creative work, *see* 17 U.S.C. § 106, an agreement creating a security interest in the receivables generated by a copyright may also be recorded in the Copyright Office. Thus, Cap Fed's security interest *could* have been recorded in the Copyright Office; the parties seem to agree on this

much. The question is, does the UCC provide a parallel method of perfecting a security interest in a copyright? One can answer this question by reference to either federal or state law; both inquiries lead to the same conclusion.

■■■ 1. Even in the absence of express language, federal regulation will preempt state law if it is so pervasive as to indicate that "Congress left no room for supplementary state regulation," or if "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (internal quotations omitted).[6] Here, the comprehensive scope of the federal Copyright Act's recording provisions, along with the unique federal interests they implicate, support the view that federal law preempts state methods of perfecting security interests in copyrights and related accounts receivable.

■■■ The federal copyright laws ensure "predictability and certainty of copyright ownership," "promote national uniformity" and "avoid the practical difficulties of determining and enforcing an author's rights under the differing laws and in the separate courts of the various States." *Community for Creative Non–Violence v. Reid,* —— U.S. ——, 109 S.Ct. 2166, 2177, 104 L.Ed.2d 811 (1989); H.R.Rep. No. 1476, 94th Cong., 2d Sess. 129 (1976), U.S.Code Cong. & Admin.News 1976, p. 5659. As

---

*Nimmer on Copyright* § 10.07[D], at 10–64—10–69 (1989), although the validity of the copyright itself generally depends on pre–1978 law. *Id.* § 10.03[A] at 10–37—10–39.

**6.** The Copyright Act does expressly preempt state law in respect to the exclusive rights possessed by holders of copyrights under federal law. *See* 17 U.S.C. § 301(a). In *Del Madera Properties v. Rhodes & Gardner, Inc.,* 820 F.2d 973 (9th Cir.1987), the Ninth Circuit adopted the "extra element" test, holding that in order to survive a federal preemption challenge under section 301, a state law must involve rights that are qualitatively different from the exclusive rights established by section 106 of the Copyright Act. *Id.* at 977. The exclusive rights listed

in section 106 include the rights to reproduce the copyrighted work, to distribute the work, to prepare derivative works and to display or perform the work. *See* 17 U.S.C. § 106.

Section 301 is inapplicable because here we are concerned not with the creation of the exclusive rights under section 106, but rather their transfer through the creation of a security interest. The transfer of a copyright interest is fundamentally different from the creation of exclusive rights to a work itself, and is governed by separate provisions in the Copyright Act. *See* 17 U.S.C. §§ 101, 201(d), 205. Therefore, under the rationale of *Del Madera Properties,* the preemptive language of section 301 has no bearing on the issues presented in this case.

discussed above, section 205(a) of the Copyright Act establishes a uniform method for recording security interests in copyrights. A secured creditor need only file in the Copyright Office in order to give "all persons constructive notice of the facts stated in the recorded document." 17 U.S.C. § 205(c).[7] Likewise, an interested third party need only search the indices maintained by the Copyright Office to determine whether a particular copyright is encumbered. *See Northern Songs, Ltd. v. Distinguished Productions, Inc.*, 581 F.Supp. 638, 640–41 (S.D.N.Y.1984); Circular 12, at 8035–4.

A recording system works by virtue of the fact that interested parties have a specific place to look in order to discover with certainty whether a particular interest has been transferred or encumbered. To the extent there are competing recordation schemes, this lessens the utility of each; when records are scattered in several filing units, potential creditors must conduct several searches before they can be sure that the property is not encumbered. *See Danning v. Pacific Propeller, Inc. (In re Holiday Airlines Corp.)*, 620 F.2d 731 (9th Cir.), *cert. denied*, 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 130 (1980); *Red Carpet Homes of Johnstown, Inc. v. Gerling (In re Knapp)*, 575 F.2d 341, 343 (2d Cir.1978); UCC § 9401, Official Comment ¶ 1. It is for that reason that parallel recordation schemes for the same types of property are scarce as hens' teeth; the court is aware of no others, and the parties have cited none. No useful purposes would be served—indeed, much confusion would result—if creditors were permitted to perfect security

interests by filing with either the Copyright Office or state offices. *See* G. Gilmore, *Security Interests in Personal Property* § 17.3, at 545 (1965); *see also* 3 *Nimmer on Copyright* § 10.05[A] at 10–44 (1989) ("a persuasive argument ... can be made to the effect that by reasons of Sections 201(d)(1), 204(a), 205(c) and 205(d) of the current Act ... Congress has preempted the field with respect to the form and recordation requirements applicable to copyright mortgages").

If state methods of perfection were valid, a third party (such as a potential purchaser of the copyright) who wanted to learn of any encumbrances thereon would have to check not merely the indices of the U.S. Copyright Office, but also the indices of any relevant secretary of state. Because copyrights are incorporeal—they have no fixed situs—a number of state authorities could be relevant. *See, e.g.*, note 4 *supra.* Thus, interested third parties could never be entirely sure that all relevant jurisdictions have been searched. This possibility, together with the expense and delay of conducting searches in a variety of jurisdictions, could hinder the purchase and sale of copyrights, frustrating Congress's policy that copyrights be readily transferable in commerce.

This is the reasoning adopted by the Ninth Circuit in *Danning v. Pacific Propeller. Danning* held that 49 U.S.C.App. § 1403(a), the Federal Aviation Act's provision for recording conveyances and the creation of liens and security interests in civil aircraft, preempts state filing provisions. 620 F.2d at 735–36.[8] According to *Danning,*

---

**7.** For a recordation under section 205 to be effective as against third parties, the copyrighted work must also have been registered pursuant to 17 U.S.C. §§ 408, 409, 410. *See* 17 U.S.C. § 205(c)(2). Of course, registration is also a prerequisite to judicial enforcement of a copyright, except for actions for infringement of copyrights in foreign works covered by the Berne Convention. 17 U.S.C. § 411; *International Trade Management, Inc. v. United States,* 553 F.Supp. 402, 402–03, 1 Cl.Ct. 39 (1982).

**8.** Section 1403(a), which is similar in scope to section 205 of the Copyright Act, provides:

The Secretary of Transportation shall establish and maintain a system for the recording of each and all of the following:

(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;

(2) Any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the title to, or any interest in [certain engines and propellers];

(3) Any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security pur-

[t]he predominant purpose of the statute was to provide one central place for the filing of [liens on aircraft] and thus eliminate the need, given the highly mobile nature of aircraft and their appurtenances, for the examination of State and County records.

620 F.2d at 735–36. Copyrights, even more than aircraft, lack a clear situs; tangible, movable goods such as airplanes must always exist at some physical location; they may have a home base from which they operate or where they receive regular maintenance. The same cannot be said of intangibles. As noted above, this lack of an identifiable situs militates against individual state filings and in favor of a single, national registration scheme.

Moreover, as discussed at greater length below, *see* pp. 205–207 *infra,* the Copyright Act establishes its own scheme for determining priority between conflicting transferees, one that differs in certain respects from that of Article Nine. Under Article Nine, priority between holders of conflicting security interests in intangibles is generally determined by who perfected his interest first. UCC § 9312(5). By contrast, section 205(d) of the Copyright Act provides:

> As between two conflicting transfers, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), *within one month after its execution in the United States or within two months after its execution outside the United States,* or at any time before recordation in such manner of the later transfer....

17 U.S.C. § 205(d) (emphasis added). Thus, unlike Article Nine, the Copyright Act permits the effect of recording with the Copyright Office to relate back as far as two months.

Because the Copyright Act and Article Nine create different priority schemes, there will be occasions when different results will be reached depending on which

scheme was employed. The availability of filing under the UCC would thus undermine the priority scheme established by Congress with respect to copyrights. This type of direct interference with the operation of federal law weighs heavily in favor of preemption. *See generally Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989).

The bankruptcy court below nevertheless concluded that security interests in copyrights could be perfected by filing either with the copyright office or with the secretary of state under the UCC, making a tongue-in-cheek analogy to the use of a belt and suspenders to hold up a pair of pants. According to the bankruptcy court, because either device is equally useful, one should be free to choose which one to wear. With all due respect, this court finds the analogy inapt. There is no legitimate reason why pants should be held up in only one particular manner: Individuals and public modesty are equally served by either device, or even by a safety pin or a piece of rope; all that really matters is that the job gets done. Registration schemes are different in that the *way* notice is given is precisely what matters. To the extent interested parties are confused as to which system is being employed, this increases the level of uncertainty and multiplies the risk of error, exposing creditors to the possibility that they might get caught with their pants down.

A recordation scheme best serves its purpose where interested parties can obtain notice of all encumbrances by referring to a single, precisely defined recordation system. The availability of parallel state recordation systems that could put parties on constructive notice as to encumbrances on copyrights would surely interfere with the effectiveness of the federal recordation scheme. Given the virtual absence of dual recordation schemes in our legal system, Congress cannot be presumed to have contemplated such a result. The court therefore concludes that any state recordation

---

poses, which lease or other instrument affects the title to, or any interest in, any aircraft engines, propellers, or appliances maintained by or on behalf of an air carrier....

49 U.S.C.App. § 1403(a).

system pertaining to interests in copyrights would be preempted by the Copyright Act.

2. State law leads to the same conclusion. Article Nine of the Uniform Commercial Code establishes a comprehensive scheme for the regulation of security interests in personal property and fixtures. By superseding a multitude of pre-Code security devices, it provides "a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and greater certainty." UCC § 9101, Official Comment. However, Article Nine is not all encompassing; under the "step back" provision of UCC § 9104, Article Nine does not apply "[t]o a security interest subject to any statute of the United States to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property."

For most items of personal property, Article Nine provides that security interests must be perfected by filing with the office of the secretary of state in which the debtor is located. *See* UCC §§ 9302(1), 9401(1)(c). Such filing, however, is not "necessary or effective to perfect a security interest in property subject to ... [a]

statute or treaty of the United States which provides for a national or international registration ... or which specifies a place of filing different from that specified in [Article Nine] for filing of the security interest." UCC § 9302(3)(a). When a national system for recording security interests exists, the Code treats compliance with that system as "equivalent to the filing of a financing statement under [Article Nine,] and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith...." UCC § 9302(4).[9]

As discussed above, section 205(a) of the Copyright Act clearly does establish a national system for recording transfers of copyright interests, and it specifies a place of filing different from that provided in Article Nine. Recording in the Copyright Office gives nationwide, constructive notice to third parties of the recorded encumbrance. Except for the fact that the Copyright Office's indices are organized on the basis of the title and registration number, rather than by reference to the identity of the debtor, this system is nearly identical to that which Article Nine generally provides on a statewide basis.[10] And, lest

---

**9.** According to the official commentary to section 9302:

> Subsection (3) exempts from the filing provisions of this Article transactions as to which an adequate system of filing, state or federal, has been set up outside this Article and subsection (4) makes clear that when such a system exists perfection of a relevant security interest can be had only through compliance with that system (i.e., filing under this Article is not a permissible alternative).
>
> ....
>
> Perfection of a security interest under a ... federal statute of the type referred to in subsection (3) has all the consequences of perfection under the provisions of [Article Nine].

UCC § 9302, Official Comment ¶¶ 8, 9.

**10.** Moreover, the mechanics of recording in the Copyright Office are analogous to filing under the UCC. In order to record a security interest in the Copyright Office, a creditor may file either the security agreement itself or a duplicate certified to be a true copy of the original, so long as either is sufficient to place third parties on notice that the copyright is encumbered. *See* 17 U.S.C. §§ 205(a), (c); 37 C.F.R. § 201.4(c)(1). Accordingly, the Copyright Act requires that the filed document "specifically identif[y] the work

to which it pertains so that, after the document is indexed by the Register of Copyrights, it would be revealed by a reasonable search under the title or registration number of the work." 17 U.S.C. § 205(c); *see also* Compendium of Copyright Office Practices II ¶¶ 1604–1612; Circular 12, at 8035–4.

That having been said, it's worth noting that filing with the Copyright Office can be much less convenient than filing under the UCC. This is because UCC filings are indexed by owner, while registration in the Copyright Office is by title or copyright registration number. *See* 17 U.S.C. § 205(c). This means that the recording of a security interest in a film library such as that owned by NPI will involve dozens, sometimes hundreds, of individual filings. Moreover, as the contents of the film library changes, the lienholder will be required to make a separate filing for each work added to or deleted from the library. By contrast, a UCC–1 filing can provide a continuing, floating lien on assets of a particular type owned by the debtor, without the need for periodic updates. *See* UCC § 9204.

This technical shortcoming of the copyright filing system does make it a less useful device for perfecting a security interest in copyright

there be any doubt, the drafters of the UCC specifically identified the Copyright Act as establishing the type of national registration system that would trigger the section 9302(3) and (4) step back provisions:

> Examples of the type of federal statute referred to in [UCC § 9302(3)(a) ] are the provisions of [Title 17] (copyrights). . . .

UCC § 9302, Official Comment ¶ 8; *see* G. Gilmore, *Security Interests in Personal Property* § 17.3, at 545 (1965) ("[t]here can be no doubt that [the Copyright Act was] meant to be within the description of § 9–302(3)(a)").[11]

The court therefore concludes that the Copyright Act provides for national registration and "specifies a place of filing different from that specified in [Article Nine] for filing of the security interest." UCC § 9302(3)(a). Recording in the U.S. Copyright Office, rather than filing a financing statement under Article Nine, is the proper method for perfecting a security interest in a copyright.

In reaching this conclusion, the court rejects *City Bank & Trust Co. v. Otto Fabric, Inc.*, 83 B.R. 780 (D.Kan.1988), and *In re Transportation Design & Technology Inc.*, 48 B.R. 635 (Bankr.S.D.Cal.1985), insofar as they are germane to the issues presented here. Both cases held that, under the UCC, security interests in patents need not be recorded in the U.S. Patent and Trademark Office to be perfected as against lien creditors because the federal statute governing patent assignments does not specifically provide for liens:

> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.
>
> . . . .
>
> An assignment, grant or conveyance shall be void as against *any subsequent purchaser or mortgagee* for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.

35 U.S.C. § 261 (emphasis added).

According to *In re Transportation*, because section 261's priority scheme only provides for a "subsequent purchaser or mortgagee for valuable consideration," it

---

libraries. Nevertheless, this problem is not so serious as to make the system unworkable. In any event, this is the system Congress has established and the court is not in a position to order more adequate procedures. If the mechanics of filing turn out to pose a serious burden, it can be taken up by Congress during its oversight of the Copyright Office or, conceivably, the Copyright Office might be able to ameliorate the problem through exercise of its regulatory authority. *See* 17 U.S.C. § 702.

**11.** Cap Fed points to a portion of the official commentary that suggests the contrary conclusion:

> Although the Federal Copyright Act contains provisions permitting the mortgage of a copyright and for the recording of an assignment of a copyright [Title 17] such a statute would not seem to contain sufficient provisions regulating the rights of the parties and third parties to exclude security interests in copyrights from the provisions of this Article.

UCC § 9104, Official Comment ¶ 1 (quoted in Memorandum of Decision at 9).

Section 9104 governs all of Article Nine, including its schemes for perfection and priorities among conflicting creditors. Thus, what the portion of the commentary quoted above says is that the Copyright Act does not preempt *all* of Article Nine's provisions. Nevertheless, the commentary makes clear that the Copyright Act does preempt those portions of Article Nine that deal with the proper place for recording security interests:

> The filing provisions under [the Copyright and Patent] Acts, like the filing provisions of the Federal Aviation Act, are recognized as the equivalent to filing under this Article.

UCC § 9104, Official Comment ¶ 1.

The portion of the commentary stating that federal copyright law does not "exclude security interests in copyrights from the provisions of this Article" probably referred to priorities between conflicting holders of security interests and liens, rather than methods of perfection. But, as discussed below, *see* note 17 *infra,* this commentary has been superseded by the subsequent expansion of the Copyright Act's priority scheme since the UCC commentary was drafted. *Compare* 17 U.S.C. § 205(d) (1988) *with* 17 U.S.C. §§ 28, 30 (1976) (now repealed).

does not require recording in the Patent and Trademark Office to perfect against lien creditors. *See* 48 B.R. at 639. Likewise, *City Bank* held that "the failure of the statute to mention protection against lien creditors suggests that it is unnecessary to record an assignment or other conveyance with the Patent Office to protect the appellant's security interest against the trustee." 83 B.R. at 782.[12]

■ These cases misconstrue the plain language of UCC section 9104, which provides for the voluntary step back of Article Nine's provisions *"to the extent* [federal law] governs the rights of [the] parties." UCC § 9104(a) (emphasis added). Thus, when a federal statute provides for a national system of recordation or specifies a place of filing different from that in Article Nine, the methods of perfection specified in Article Nine are supplanted by that national system; compliance with a national system of recordation is equivalent to the filing of a financing statement under Article Nine. UCC § 9302(4). Whether the federal statute also provides a priority scheme different from that in Article Nine is a separate issue, addressed below. *See* pp. 205–207 *infra*. Compliance with a national registration scheme is necessary for perfec-

tion regardless of whether federal law governs priorities.[13] Cap Fed's security interest in the copyrights of the films in NPI's library and the receivables they have generated therefore is unperfected.[14]

**B. *Effect of Failing to Record with the Copyright Office***

■ Having concluded that Cap Fed should have, but did not, record its security interest with the Copyright Office, the court must next determine whether NPI as a debtor in possession can subordinate Cap Fed's interest and recover it for the benefit of the bankruptcy estate. As a debtor in possession, NPI has nearly all of the powers of a bankruptcy trustee, *see* 11 U.S.C. § 1107(a), including the authority to set aside preferential or fraudulent transfers, as well as transfers otherwise voidable under applicable state or federal law. *See* 11 U.S.C. §§ 544, 547, 548.

■ Particularly relevant is the "strong arm clause" of 11 U.S.C. § 544(a)(1), which, in respect to personal property in the bankruptcy estate, gives the debtor in possession every right and power state law confers upon one who has acquired a lien by legal or equitable proceedings.[15] If, under the applicable law, a

---

12. The district court in *City Bank* further held that, if Congress intended to preempt the field of filing and to require perfection in the Patent and Trademark Office, it could have explicitly said so. *See* 83 B.R. at 782. However, under UCC § 9302(3), the proper inquiry is not whether Congress has preempted state law—for Article Nine's provisions clearly could not apply then—but rather whether Congress has established a regulatory scheme governing secured interests that is sufficiently comprehensive to supersede all or part of Article Nine by virtue of section 9104(a).

13. When a federal statute provides a system of national registration but fails to provide its own priority scheme, the priority scheme established by Article Nine—namely UCC § 9301—will generally govern the conflicting rights of creditors. Whether a creditor's interest is perfected, however, depends on whether the creditor recorded its interest in accordance with the federal statute. *See* UCC § 9302(4).

14. The court also finds two trademark cases, *TR–3 Indus. v. Capital Bank (In re TR–3 Indus.),* 41 B.R. 128 (Bankr.C.D.Cal.1984), and *Roman Cleanser Co. v. National Acceptance Co. (In re*

*Roman Cleanser Co.),* 43 B.R. 940 (Bankr.E.D. Mich.1984), *aff'd mem.* (E.D.Mich.1985), 802 F.2d 207 (6th Cir.1986), to be distinguishable. Both cases held that security interests in trademarks need not be perfected by recording in the United States Patent and Trademark Office. However, unlike the Copyright Act, the Lanham Act's recordation provision refers only to "assignments" and contains no provision for the registration, recordation or filing of instruments establishing security interests in trademarks. *See Li'l Red Barn, Inc. v. Red Barn System, Inc.,* 322 F.Supp. 98, 107 (N.D.Ind.1970) (mere agreement to assign mark in the future is not an "assignment" and therefore may not be recorded). The Copyright Act authorizes the recordation of "transfers" in the Copyright Office, and defines transfers as including "mortgages," "hypothecations" and, thus, security interests in copyrights.

15. 11 U.S.C. § 544(a)(1) provides:

The [debtor in possession] shall have, as of the commencement of the case and without regard to any knowledge of the [debtor in possession] or of any creditor, the rights and powers of, or may avoid any transfer of prop-

judicial lien creditor would prevail over an adverse claimant, the debtor in possession prevails; if not, not. *Wind Power Systems, Inc. v. Cannon Financial Group, Inc. (In re Wind Power Systems, Inc.)*, 841 F.2d 288, 293 (9th Cir.1988); *Angeles Real Estate Co. v. Kerxton (In re Construction General Inc.)*, 737 F.2d 416, 418 (4th Cir. 1984). A lien creditor generally takes priority over unperfected security interests in estate property because, under Article Nine, "an unperfected security interest is subordinate to the rights of ... [a] person who becomes a lien creditor before the security interest is perfected." UCC § 9301(1)(b). But, as discussed previously, the UCC does not apply to the extent a federal statute "governs the rights of parties to and third parties affected by transactions in particular types of property." UCC § 9104. Section 205(d) of the Copyright Act is such a statute, establishing a priority scheme between conflicting transfers of interests in a copyright:

> As between two conflicting *transfers*, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), within one month after its execution in the United States or within two months after its execution outside the United States, or at any time before recordation in such manner of the later transfer. Otherwise, the later *transfer* prevails if recorded first in such manner, and if taken in good faith, for valuable consideration or on the basis of a binding promise to pay royalties, and without notice of the earlier *transfer*.

17 U.S.C. § 205(d) (emphasis added). For the reasons discussed above, *see* p. 201 *supra*, the federal priority scheme preempts the state priority scheme.

Section 205(d) does not expressly address the rights of lien creditors, speaking only in terms of competing transfers of copyright interests. To determine whether NPI, as a hypothetical lien creditor, may avoid Cap Fed's unperfected security interest, the court must therefore consider whether a judicial lien is a transfer as that term is used in the Copyright Act.

As noted above, the Copyright Act recognizes transfers of copyright ownership "in whole or in part by any means of conveyance or by operation of law." 17 U.S.C. § 201(d)(1). Transfer is defined broadly to include any "assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright ... whether or not it is limited in time or place of effect." 17 U.S.C. § 101. A judicial lien creditor is a creditor who has obtained a lien "by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32). Such a creditor typically has the power to seize and sell property held by the debtor at the time of the creation of the lien in order to satisfy the judgment or, in the case of general intangibles such as copyrights, to collect the revenues generated by the intangible as they come due. *See, e.g.*, Cal.Civ. P.Code §§ 701.510, 701.520, 701.640.[16]

---

erty of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

**16.** A critical issue—curiously overlooked by the parties—is whether a judicial lien may be used to encumber a copyright. *See Independent Film Distrib. Ltd. v. Chesapeake Indus., Inc.*, 148 F.Supp. 611, 614 n. 5 (S.D.N.Y.1957) ("Query whether a copyright may be subjected to a lien otherwise than in the manner provided in [Title 17]."), *rev'd on other grounds*, 250 F.2d 951 (2d Cir.1958). If not, the debtor in possession

would be unable to use 11 U.S.C. § 544(a)(1) to avoid prior unperfected security interests in copyrights.

To determine this, we must first look to state law, as state law generally determines the validity of liens in bankruptcy cases. *See Danning v. Pacific Propeller, Inc. (In re Holiday Airlines Corp.)*, 620 F.2d 731, 735 n. 4 (9th Cir.1980). In California, a creditor who obtains a money judgment may obtain a writ of execution that, when levied on a particular piece of the debtor's property, creates an execution lien on that property. *See* Cal.Civ.P.Code §§ 699.510, 697.710. This writ may be levied on virtually every type of personal and real property, including accounts receivables and "general intangibles." *See* Cal.Civ.P.Code §§ 699.710, 700.170. The California Code of Civil Procedure defines gen-

Thus, while the creation of a lien on a copyright may not give a creditor an immediate right to control the copyright, it amounts to a sufficient transfer of rights to come within the broad definition of transfer under the Copyright Act. *See Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin)*, 890 F.2d 123, 127 n. 7 (9th Cir.1989) (under the Bankruptcy Code, "[t]his court has consistently treated the creation of liens on the debtor's property as a transfer").

■■■■■■ Cap Fed contends that, in order to prevail under 17 U.S.C. § 205(d), NPI must have the status of a bona fide purchaser, rather than that of a judicial lien creditor. *See Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1401 n. 4 (9th Cir.1984) (judicial lien creditor does not have the same rights as a bona fide purchaser); *cf.* 11 U.S.C. § 544(a)(3) (for real estate in the bankruptcy estate, debtor in possession has

eral intangibles as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money." Cal.Civ.P.Code § 481.115 (incorporating by reference UCC § 9106). The Official Commentary to section 9106 specifically identifies "copyrights, trademarks and patents" as included in the definition of general intangibles. It appears, therefore, that at least in California, a judicial lien may, in fact, be used to encumber a copyright.

But that's only half the task; the court must also determine whether federal law insulates copyrights from attachment by state court proceedings. Section 201(e) provides:

When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under Title 11.

17 U.S.C. § 201(e).

The court construes this section as dealing with actions *initiated* by governmental bodies, not with those where, as in the case of a judgment lienholder, the instruments of government are merely acting in furtherance of private objectives. Indeed, it appears that the section was intended to prevent expropriations of copyrights by foreign governments in their efforts to suppress the works of dissident authors. *See* 3 *Nimmer on Copyright* § 10.05, at 10–42; H.R. Rep. No. 94–1476, 94th Cong., 2d Sess. (1976).

the rights of a bona fide purchaser). Cap Fed, in essence, is arguing that the term transfer in section 205(d) refers only to consensual transfers. For the reasons expressed above, the court rejects this argument. The Copyright Act's definition of transfer is very broad and specifically includes transfers by operation of law. 17 U.S.C. § 201(d)(1). The term is broad enough to encompass not merely purchasers, but lien creditors as well.[17] NPI therefore is entitled to priority if it meets the statutory good faith, notice, consideration and recording requirements of section 205(a). As the hypothetical lien creditor, NPI is deemed to have taken in good faith and without notice. *See* 11 U.S.C. § 544(a). The only remaining issues are whether NPI could have recorded its interest in the Copyright Office and whether it obtained its lien for valuable consideration.

In any event, this section has no application to governmental actions taken in the sphere of private law where the government is merely enforcing private rights and is not the ultimate beneficiary.

**17.** Even if the court were to agree with the holdings of *City Bank* and *In re Transportation,* those cases could be distinguished here. Unlike 17 U.S.C. § 205(d), the priority scheme created under the Patent Act specifically applies only to "subsequent purchaser[s] [and] mortgagee[s]." 35 U.S.C. § 261. Lien creditors are neither.

Likewise, although the commentary to UCC § 9104 appears to hold that Article Nine does not defer to the federal priority scheme for conflicting interests in copyrights, *see* note 11, *supra,* this commentary was drafted before the enactment of the Copyright Act of 1976. The priority scheme in the now-repealed Copyright Act of 1909 was not nearly as comprehensive as that in the current Act:

Every assignment of copyright shall be recorded in the copyright office within three calendar months after its execution in the United States or within six calendar months after its execution without the limits of the United States, in default of which it shall be void as against *any subsequent purchaser or mortgagee* for a valuable consideration, without notice, whose assignment has been duly recorded.

17 U.S.C. § 30 (emphasis added) (now repealed).

As noted above, the current Copyright Act's definition of transfer includes many more transactions involving copyright ownership than just purchases and mortgages.

In order to obtain a lien on a particular piece of property, a creditor who has received a money judgment in the form of a writ of execution must prepare a notice of levy that specifically identifies the property to be encumbered and the consequences of that action. *See* Cal.Civ.P.Code § 699.540. If such a notice identifies a federal copyright or the receivables generated by such a copyright, it and the underlying writ of execution, constitute "document[s] pertaining to a copyright" and, therefore, are capable of recordation in the Copyright Office. *See* 17 U.S.C. § 205(a); Compendium of Copyright Office Practices II ¶¶ 1602–1603 (identifying which documents the Copyright Office will accept for filing).[18] Because these documents could be recorded in the Copyright Office, NPI as debtor in possession will be deemed to have done so.[19]

Finally, contrary to Cap Fed's assertion, a trustee or debtor in possession is deemed to have given valuable consideration for its judicial lien. Section 544(a)(1) provides:

> The trustee [or debtor in possession] shall have, as of the commencement of the case ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by ... a creditor *that extends credit to the debtor at the time of the commencement of the case,* and that obtains, at such time and with respect to such credit, a judicial lien

on all property on which a creditor on a simple contract could have obtained such a judicial lien....

11 U.S.C. § 544(a)(1) (emphasis added). The act of extending credit, of course, constitutes the giving of valuable consideration. *See First Maryland Leasecorp v. M/V Golden Egret,* 764 F.2d 749, 753 (11th Cir.1985); *United States v. Cahall Bros.,* 674 F.2d 578, 581 (6th Cir.1982). In addition, the trustee's lien—like that of any other judgment creditor—is deemed to be in exchange for the claim that formed the basis of the underlying judgment, a claim that is extinguished by the entry of the judgment.

Because NPI meets all of the requirements for subsequent transferees to prevail under 17 U.S.C. § 205(d)—a transferee who took in good faith, for valuable consideration and without notice of the earlier transfer—Cap Fed's unperfected security interest in NPI's copyrights and the receivables they generated is trumped by NPI's hypothetical judicial lien. NPI may therefore avoid Cap Fed's interest and preserve it for the benefit of the bankruptcy estate.[20]

## CONCLUSION

The judgment of the bankruptcy court is reversed. The case is ordered remanded for a determination of which movies in NPI's library are the subject of valid copyrights. The court shall then determine the status of Cap Fed's security interest in the

---

18. California law recognizes that notices of levy and writs of execution may be recorded; for certain types of property, they must be filed together to be effective. Cal.Civ.P.Code §§ 700.-015 (real property); *id.* § 700.020 (growing crops, timber to be cut or minerals).

19. Under 11 U.S.C. § 544(a)(1), not only is the debtor in possession given the rights of a judicial lien creditor, it is also deemed to have *exercised* those rights in their entirety. *Sampsell v. Straub,* 194 F.2d 228, 231 (9th Cir.1951), *cert. denied,* 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338 (1952); 4 Collier on Bankruptcy ¶ 544.02, at 544–7—544–8. As noted, the Copyright Act permits the recordation of any "document pertaining to a copyright," 17 U.S.C. § 205(a), which includes any document that

> has a direct or indirect relationship to the existence, scope, duration, or identification of

a copyright, or to the ownership, division, allocation, licensing, transfer, or exercise of rights under a copyright. That relationship may be past, present, future, or potential.

37 C.F.R. §§ 201.4(a)(2).

20. Because the court finds Cap Fed's UCC–1 filing invalid as to NPI's copyrights, it need not consider NPI's claim that the statement did not sufficiently describe the collateral. However, to the extent that the security agreement covered collateral other than copyrights and receivables generated therefrom, Cap Fed may have a perfected security interest that survives NPI's petition for bankruptcy. It is unclear from the bankruptcy court's opinion whether there are in fact assets related to the film library other than copyrights and receivables, such as equipment.

movies and the debtor's other property. To the extent that interest is unperfected, the court shall permit NPI to exercise its avoidance powers under the Bankruptcy Code.

IT IS SO ORDERED.