Horace TRIMARCHI and Personal
Dating Services, Inc.,
Appellants,

v.

TOGETHER DEVELOPMENT
CORP., Appellee.

No. CIV.A. 99–40000–NMG.

United States District Court,
D. Massachusetts.

Nov. 21, 2000.

Alan L. Braunstein, Daniel S. Bleck,
Riemer & Braunstein, Boston, MA, for
debtor/appellee.

Susan B. Fagan–Limpert, James A. Kridel, Jr. & Associates, Clifton, NJ, for appellants.

## MEMORANDUM & ORDER

GORTON, District Judge.

Appellants Horace Trimarchi ("Trimarchi") and Personal Dating Services, Inc. ("PDS") appeal the Bankruptcy Court's ruling that Trimarchi does not have a perfected security interest in the "Together" trademark.[1] Pending before this Court is appellants' Motion for Reversal of Bankruptcy Court's Determination (Docket No. 7). Appellee, Together Development Corporation ("TDC"), has filed an opposition to the motion, and appellants a reply brief.

## I. Background

TDC's business involved selling and servicing various dating services franchises located throughout the United States and Canada. Prior to 1986, Trimarchi owned 25% of the outstanding shares of TDC. In May, 1986, Trimarchi and TDC entered into an agreement pertaining to the repurchase of stock of the corporation ("the Agreement"). In connection with that agreement, TDC executed two separate promissory notes evidencing its obligations to Trimarchi. Both notes were secured by a "Security Agreement/Chattel Mortgage" in TDC's accounts receivable, Trademark, franchise fees and royalties.

In addition to the Security Agreement, TDC assigned to Trimarchi a security interest in TDC's

> Trademark (Together Dating Service) ... which is registered under Certificate Number 1,145,365 in the United States Patent Office ... along with the goodwill of the business connected with that mark

("the Trademark"). TDC also gave Trimarchi a signed UCC–1 Financing Statement ("UCC–1") governing specifically described collateral, including the "Together" Trademark, Registration No. 1,145,365.

Trimarchi filed the UCC–1 with the United States Patent and Trademark Office ("PTO"), which acknowledged the filing. He did not file the UCC–1 with the Secretary of State of Connecticut, where TDC's principal place of business was then located, or with any other state or town clerk's office.

In November 1997, TDC filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code. In 1998, the Bankruptcy Court ordered TDC to sell substantially all of its assets, including the Trademark. Trimarchi objected to the sale of the Trademark, claiming that it was precluded by the earlier "assignment". The Bankruptcy Court overruled the objection and scheduled an evidentiary hearing to adjudicate the validity and perfection of Trimarchi's security interest.

After the hearing, the Bankruptcy Court ruled that Trimarchi's security interest in the Trademark was unperfected because he had failed to file the UCC–1 in the requisite state and local offices. The Bankruptcy Court concluded that Trimarchi was not, therefore, entitled to any lien on the proceeds of the sale of TDS's assets. Trimarchi and PDS appeal the Bankruptcy Court's ruling.

The issue on this appeal is whether the Bankruptcy Court erred, as a matter of law, in holding that a security interest in a trademark may not be perfected solely by the filing of a UCC–1 with the PTO.

## II. Discussion

### A. Standard of Review

■ The district court reviews a bankruptcy court's rulings of law *de novo. In re LaRoche,* 969 F.2d 1299, 1301 (1st Cir. 1992).

---

1. Although both Trimarchi and PDS appeal the Bankruptcy Court's ruling, PDS's interest in the subject trademark is not claimed in their briefs. Therefore, this Memorandum and Order addresses only Trimarchi's interest in the trademark.

## B. Governing Law

### 1. Preemption

 It is a well-established principle of law that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that "interfere with, or are contrary to," federal law. The United States Supreme Court has held that, under the Supremacy Clause, federal law supersedes state law

(1) by the federal law's express terms,

(2) where the federal regulation scheme is sufficiently comprehensive to infer that Congress reasonably "left no room" for supplementary state regulation,

(3) where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject", and

(4) where state law actually conflicts with federal law, as when "compliance with both federal and state regulations is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress".

*Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 712–713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985); *Greenwood Trust Co. v. Com. of Mass.,* 971 F.2d 818, 822–823 (1st Cir. 1992).

### 2. New York Uniform Commercial Code

The Agreement provides that it "shall be interpreted under the Laws of the State of New York ...", but does not state it shall be "governed" by New York law. Because there is no essential difference among the states on the point at issue, this Court will assume, as did the Bankruptcy Court, that the agreement is governed by New York law in all respects.

New York's Uniform Commercial Code § 9–302(3) provides in relevant part:

(3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to

(a) a statute or treaty of the United States which provides for a national or international registration or a national or international certificate of title or which specifies a place of filing different from that specified in this Article for filing of the security interest;

. . . .

(4) Compliance with a statute or treaty described in subsection (3) is equivalent to the filing of a financing statement under this Article, and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith except as provided in Section 9–103 on multiple state transactions. Duration and renewal of perfection of a security interest perfected by compliance with the statute or treaty are governed by the provisions of the statute or treaty; in other respects the security interest is subject to this Article.

N.Y. U.C.C. § 9–302(3)–(4) (McKinney 1997).

### 3. The Lanham Act

 The Lanham Act, codified as 15 U.S.C. § 1051 et seq., governs trademarks. Its provision on the transfer of an interest in a trademark states in relevant part:

A registered mark or a mark for which application to register has been filed shall be assignable with the goodwill of the business in which the mark was used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark.... An assignment shall be void as against any subsequent purchaser for a valuable consideration without notice, unless it is recorded in the Patent and Trademark Office within three months after the date thereof or prior to such subsequent purchase.

15 U.S.C. § 1060. The Lanham Act does not define the word "assignment".

## C. The Parties' Arguments

Appellants argue that the filing of the UCC–1 with the PTO was sufficient to perfect Trimarchi's security interest in the Trademark and that the Lanham Act creates an exemption to State and local filing requirements pursuant to New York's Uniform Commercial Code § 9–302(3) and the Supremacy Clause of the United States Constitution. They contend that (1) according to the plain language of the statute, a filing with the State of New York is unnecessary and ineffective to perfect a security interest, (2) because the Lanham Act provides for national registration of assignments of trademarks, the exception for state and local filing contained within § 9–302(a) applies, and (3) Trimarchi's interest in the Trademark was perfected upon his filing the UCC–1 with the PTO.

In support of their preemption argument, appellants analogize this case to cases wherein courts have held that the Copyright Act preempted state filing requirements for the perfection of security interests in copyrights. Those cases focused on the nature of copyrights as intangibles without a clear situs, and concluded that the "lack of identifiable situs militates against individual state filings and in favor of a single, national registration scheme." *In re Peregrine Entertainment, Ltd.,* 116 B.R. 194, 201 (C.D.Cal.1990). The *Peregrine* court held that a secured creditor need only file in the Copyright Office in order to give "all persons constructive notice of the facts stated in the recorded document." *Id.* at 200. Appellants assert that, as with copyrights, the intangible nature of trademarks and the efficiency of a single recordation scheme compels similar treatment under the Lanham Act.

Appellants note that the Bankruptcy Court and the appellee mistakenly focus on the fact that the Copyright Act expressly preempts state filing requirements. They contend it is wrong to equate statutory silence on the subject of preemption with an intention not to preempt state filing requirements (*citing Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 749, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989); *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 686, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987)).

TDC maintains that the U.C.C. controls the issue of Trimarchi's perfection of his interest in the Trademark. It argues that the Lanham Act fails to preempt the field on that issue because the statute contains no provision relating to the registration, recording or filing of instruments establishing security interests in trademarks.

TDC also notes that (1) every court which has addressed the issue of perfecting a security interest in a trademark has concluded that Article 9 of the Uniform Commercial Code governs such transactions, (2) all the relevant cases focus on the place and method of filing as the dispositive criteria in determining whether preemption applies and (3) because the Lanham Act does not specify a place of filing a security interest different than that specified in the U.C.C., the statutory filing requirement is not preempted.

TDC contends that the Lanham Act provides only for the filing of "assignments" of trademarks, and, though the term is not defined, "assignment" does not include a security interest in a trademark. Appellants held only a security interest in, and not an assignment of, the Trademark according to TDC.

In response to the appellants' analogies to the Copyright Act, TDC sees the Lanham Act as critically distinct with respect to the perfection of various interests. TDC points out that (1) the Copyright Act expressly authorizes the recordation of transfers in the United States Copyright Office, and defines "transfers" to include "mortgages" and "hypothecations", including a pledge of the copyright as security or collateral for a debt, and (2) the Official Comment to § 9–104 of the U.C.C. supports distinguishing trademark cases from

those involving patents or copyrights. The Comment states that the filing provisions contained in the Copyright Act and the Patent Act "are recognized as the equivalent" to filing under Article 9. Because the comment does not specifically include a reference to the Lanham Act as "equivalent" to filing under Article 9, TDC argues that the Lanham Act does not preempt the U.C.C.'s filing requirements.

### D. Analysis

 An analysis of Article 9 of the U.C.C., the Lanham Act, case law and general policy considerations indicates that the Lanham Act does not preempt the U.C.C.'s filing requirements and that the perfection of a security interest in a trademark is governed by Article 9.

### 1. The U.C.C. Provision

The original 1962 text of § 9–302(3) provided that the filing provisions of Article 9 were inapplicable to a security interest in property subject

> to a statute ... of the United States which provides for a national registration or filing of all security interests in such property [or to certain state statutes].

U.C.C. § 9–302(3) (1962) (amended 1972). The Official Comment to the 1962 Official Text states that this subsection was intended to exempt from U.C.C. filing "transactions as to which an adequate system of filing, state or federal, has been set up outside this Article." U.C.C. § 9–302(3) comment at 8 (1962). In such cases, "subsection (4) makes clear that when such a system exists perfection of a relevant security interest can be had only through compliance with that system." *Id.*

The comment suggests that a system of national registration of security interests was intended as the prerequisite for federal preemption of Article 9, rather than the mere federal registration of that property. Alice Haemmerli, *Insecurity Interests: Where Intellectual Property and Commercial Law Collide,* 96 Colum. L.Rev. 1645,

1662 (1996). In 1972, § 9–302(3) was amended to its current form, as adopted by New York. The Official Comment to the 1972 Official Text does not mention any change in the meaning of "national registration".

Furthermore, a drafted, proposed revision of the current § 9–302(3) supports the view that, even now, it pertains to federal statutes which provide a system for the filing of security interests. A discussion draft submitted by the Council of the American Law Institute (ALI) rewrites the relevant portion to read:

> the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to (1) a statute *or treaty of the United States* under which the exclusive method of perfecting a security interest is (i) compliance with the requirements of a national or international registration or certificate-of-title system [or] (ii) filing at an office that is different from the office specified in this article for filing a financing statement. . . .

U.C.C. Revised Article 9, § 9–302(c) at 42 (Discussion Draft, 1996), *cited in* Haemmerli, 96 Colum. L.Rev. at 1663. The ALI draft clearly suggests that in order for federal law to preempt the U.C.C., the federal statute itself must provide a method for perfecting a security interest.

### 2. The Lanham Act

The Lanham Act does not speak of security interests as such nor does it provide for the filing of notification of such interests. Section 1060 requires the recordation of assignments, without providing a definition of the word. The text of that section indicates that an assignee of a trademark must record its assignment if the assignee wants assurance that the assignment is not void as against a subsequent purchaser for value and without notice. 15 U.S.C. § 1060.

In stark contrast are the Federal Aviation Act ("FAA") and the Copyright Act.

The FAA provides for recordation of "any conveyance which affects the title to, or any interest in, any civil aircraft. . . ." 49 U.S.C. § 44107 (1994). The Copyright Act specifically addresses the validity of security interests in copyrights. It provides that mortgages and hypothecations are transfers and establishes how they are validly made. It also contains a recordation scheme that requires the recording of copyright transfers at the Copyright Office in order to provide constructive notice of such transfers. 17 U.S.C. § 205 (1994). On the other hand, the Lanham Act contains no such similar provisions relating to mortgages, hypothecations or recordation schemes relating to the perfection of security interests.

Finally, in 1988 the United States Senate passed a bill that, among other things, would have (1) federalized the filing of documents relating to security interests in trademarks and (2) brought the recordation and priority of security interests in trademarks into conformity with the counterpart copyright provisions. S. 1883, 100th Cong. (1988). The portion of the bill related to security interests was not enacted, however, and thus, as one commentator notes, "the U.C.C. continues to control security interests in trademarks". Stuart M. Rilback, *Intellectual Property Licenses; The Impact of Bankruptcy,* 576 PLI/Pat 199, fn. 95 (1999).

### 3. Case law

Case law addressing the issue at hand consistently supports the proposition that the Lanham Act does not pertain to security interests and that Article 9, therefore, continues to govern the perfection of such interests. *See In re Roman Cleanser Co.,* 43 B.R. 940 (Bankr.E.D.Mich.1984), *aff'd* 802 F.2d 207 (6th Cir.1986) (based solely on interpretation of Lanham Act).

In the *Roman Cleanser* case, a creditor moved to intervene in an adversary proceeding, contending that it had a security interest in trademarks which were sold by the trustee and as to which another creditor claimed ownership. The trustee argued that, in order to perfect a security interest in a federally registered trademark, a creditor must file a conditional assignment with the PTO, and because that creditor failed to do so, its security interest was unperfected.

The court found that the creditor had validly perfected his security interest by his U.C.C. filing. It held that a grant of a security interest could not be characterized as an "assignment" under the Lanham Act because (1) title to the collateral did not pass to the secured creditor and (2) a security interest is an agreement for a future assignment, not a present assignment of the mark or the goodwill associated with the mark. *In re Roman Cleanser,* 43 B.R. at 944. The court noted that

> [t]he terms 'assignment' and 'security interest' are terms of art with distinct and different meanings. If Congress intended to provide a means for recording security interests in trademarks in addition to assignments, it would have been simple to so state.

*Id.* at 946.

The court pointed out that requiring federal filing of security interests would not further Congress's concern for protecting the public from the deceptive use of trademarks because a secured creditor has no right to use the mark absent debtor default. The court concluded that "since a security interest in a trademark is not equivalent to an assignment, the filing of a security interest is not covered by the Lanham Act" and the manner of perfecting a security interest in trademarks is governed by Article 9 of the U.C.C. *In re Roman Cleanser,* 43 B.R. at 944.

Courts which have subsequently dealt with the same issue have followed the logic and the holding of the *Roman Cleanser* court. *See In re TR–3 Industries,* 41 B.R. 128, 131 (Bankr.C.D.Cal.1984) (the omission by Congress of a registration provision for security interests in trademarks was purposeful and the recordation provi-

sion of the Lanham Act does not preempt Article 9); *In re C.C. & Co., Inc.,* 86 B.R. 485, 487 (Bankr.E.D.Va.1988) (Congress did not intend Lanham Act to provide method for perfection of security interest in trade names and lender had properly perfected its security interest in a trade name by filing financing statement under Virginia's U.C.C.); *In re Chattanooga Choo–Choo Co.,* 98 B.R. 792 (Bankr. E.D.Tenn.1989) (Lanham Act provides only for registration of ownership, not notice of security interests, and therefore Article 9 governs perfection of a security interest in a trademark); *In re 199Z, Inc.,* 137 B.R. 778 (Bankr.C.D.Cal.1992) (because Lanham Act refers only to assignments and not to "pledges, mortgages, or hypothecations of trademarks," a PTO filing did not perfect the creditor's security interest in a trademark).

### 4. Policy Considerations

Finally, in terms of policy, it makes good sense to limit the application of § 9–302 to those federal statutes which specifically and systematically provide for the filing of "all security interests" in a given form of property. A federal intellectual property registration or certificate of title, such as a certificate of federal trademark registration, reveals the name of the registrant and identifies the property but does not provide a list of lienholders. If national registration alone, without any federal system for the recordation of security interests, suffices to supplant U.C.C. requirements, the application of § 9–302(3)(a) would leave the holder of a security interest with no means of recording or perfecting that interest. Absent a reliable means of verifying the status of their collateral, secured lenders would be more reluctant to extend credit. Such a result would be inconsistent with the stated purpose of Article 9 of providing a "simple and unified structure" for secured transactions. U.C.C. § 9–101 cmt. (1962). *See also* Haemmerli at 1662.

### ORDER

For the reasons stated in the Memorandum above, the determination of the Bankruptcy Court that: (1) the Lanham Act's registration provision does not preempt U.C.C. filing requirements for the perfection of a security interest in a trademark, and (2) Trimarchi failed to file in accordance with the U.C.C. and therefore did not perfect his security interest in the Trademark, are **AFFIRMED**. This Bankruptcy Appeal is **DISMISSED**.

**So ordered.**