TANDY CORPORATION, Plaintiff,

v.

PERSONAL MICRO COMPUTERS, INC.; Eaca International, Ltd.; Eaca Electronics Corp. of America Compumart; Consumer Computers Mailholder; Simutek Computer Products; Robitaille & Sons Enterprise, Inc., d.b.a. Tse Hardside; and Roger W. Robitaille, d.b.a. the Software Exchange, Defendants.

No. C-81-0744 RFP.

United States District Court,
N. D. California.

Aug. 31, 1981.

John N. Hauser, Barry P. Goode, Jesse W. Markham, Jr., McCutchen, Doyle, Brown & Enerson, San Francisco, Cal., for plaintiff Tandy Corp.

Thomas E. Schatzel, Peter W. Gumaer, Law Offices of Thomas E. Schatzel, Santa Clara, Cal., for defendants Personal Micro Computers, EACA Intern., Ltd., EACA Electronics Corp. of America, Consumer Computers Mailholder and Simutek Computer Products.

James R. Irwin, Shider, McBroom, Gates & Baldwin, Seattle, Wash., John F. Taylor, Linda E. Stanley, Dinkelspiel & Dinkelspiel, San Francisco, Cal., for third party defendant Microsoft.

PECKHAM, Chief Judge.

Plaintiff has sued defendants, stating five causes of action: (1) copyright infringement; (2) unfair competition under federal law, pursuant to 15 U.S.C. § 1125; (3) unfair competition under state law, pursuant to Calif. Business and Prof.Code § 17200 *et seq.*; (4) assumpsit; and (5) interference with prospective advantage (unjust enrichment). The dispute centers around the alleged duplication of a computer program for which the copyright is held by the plaintiff.

Defendants moved to dismiss all of the claims for relief. Their papers, however, focused almost exclusively on the first claim, copyright infringement. They made virtually no attempt to argue their motion as to the other four claims for relief. At the hearing on the motions, the court indicated that it was prepared to deny the motion as it related to counts two through five of the complaint, and counsel for the defendant indicated that they would with-

draw the motion as to those four counts. The court will therefore address only the first count of the complaint.

Tandy Corporation, the plaintiff, is the manufacturer of the Radio Shack TRS–80, which is a computer designed for home use. This computer includes what is called an "input-output routine." This is a computer program which tells the computer how to take the information which is put into the computer by an operator in one computer language and translate that information into a more simplified "machine" language which the computer can understand. For obvious reasons, this program is crucial to the operation of the computer, and it is this program which is the subject of the lawsuit. Plaintiff claims that defendants copied that program from the TRS–80, changing only certain items which specifically identify the program as "Radio Shack" or "Tandy," and then used it in their own computer designed for home use, called the PMC–80.

The basis of this motion to dismiss stems from the method by which this program is placed into and stored in the computer. The technology of computers has reached the point where programs can be imprinted directly onto silicon chips. Those chips are then permanently wired into the computer. This type of information storage is called "Read Only Memory" or "ROM." The defendants contend that ROM chips are not "copies" of the original computer program within the meaning of the federal copyright laws, and that therefore a ROM chip which is a copy of another ROM chip does not infringe the copyright covering the original program. The plaintiff disputes that claim, suggesting that this form of fixation was covered at the relevant time by the copyright laws.

■ There is no dispute that the court is to initially look to the Copyright Act which was passed by Congress in 1976 and went into effect on January 1, 1978. P.L. 94–553, 90 Stat. 2541. Looking first to sections 101 and 102 of that Act, 17 U.S.C. § 101, § 102, the court is convinced that under those provisions (1) a computer program is a "work of authorship" subject to copyright, and (2) that a silicon chip is "tangible medium of expression," within the meaning of the statute, such as to make a program fixed in that form subject to the copyright laws.

■ There can be little doubt that computer programs themselves are among the "works of authorship" covered by the Copyright Act. In fact, the legislative history indicates that Congress understood that computer programs were subject to copyright protection under the law as it existed prior to the 1976 act, as well as under the new statute. *See, e. g.,* House Report No. 1476, 94th Cong., 2nd Sess. (1976) at 51, *reprinted in* [1976] *U.S.Code Cong. and Admin.News* 5659, 5664. The defendants do not appear to dispute this point. Moreover, the statute itself states that works can be "fixed" in "any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, *either directly or with the aid of a machine or device.*" 17 U.S.C. § 102(a) (emphasis added). If any doubt is left by the wording of the statute, the legislative history makes clear the all-inclusive nature of the definition of "fixed" form:

> Under the bill it makes no difference what the form, manner or medium of fixation may be—whether it is in words, numbers, notes, sounds, pictures or any other graphic or symbolic indicia, whether embodied in a physical object in written, printed, photographic, sculptural, punched, magnetic, or other stable form, and whether it is capable of perception directly or by means of any machine or device "now known or later developed."

House Report No. 1476, *supra,* at 52, *reprinted in* [1976] *U.S.Code, etc., supra,* at 5665. The imprinting of a computer program on a silicon chip, which then allows the computer to read the program and act upon its instructions, falls easily within this definition. *But see Data Cash Systems, Inc. v. JS&A Group, Inc.,* 480 F.Supp. 1063, 1066 n.4 (N.D.Ill.1979) (stating in dicta that under the 1976 copyright act, the duplication of a ROM would not be actionable), *affirmed on other grounds,* 628 F.2d 1038 (7th Cir. 1980).

If this was the end of the matter, the court would have no difficulty in resolving the question. However, the 1976 act also contained a section which stated,

Notwithstanding the provisions of sections 106 through 116 and 118, this title does not afford to the owner of copyright in a work any greater or lesser rights with respect to the use of the work in conjunction with automatic systems capable of storing, processing, retrieving, or transferring information, or in conjunction with any similar device, machine, or process, than those afforded to works under the law, whether title 17 or the common law or statutes of a State, in effect on December 31, 1977, as held applicable and construed by a court in an action brought under this title.

17 U.S.C. § 117 (repealed).* Defendants contend that this language requires this court to apply the law as it existed prior to January 1, 1978 to determine whether the ROM chip was a "copy" within the meaning of the copyright laws. Under the law of *White-Smith Publishing Co. v. Apollo,* 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655 (1908), the defendants assert that it cannot be so considered. Plaintiff, on the other hand, argues that section 117 does not require the application of the pre-1978 law to determine whether the ROM chip is a "copy." Moreover, it argues that the evidence developed to date suggests the possibility that the defendants made their copy of the ROM chip by copying a visual or printed display of the program, and then imprinting it on the chip. Finally, the plaintiff argues that the pre-1978 copyright law would allow this court to find that the ROM chip was a "copy" within the meaning of that law. Because the court is persuaded by the plaintiff's first two assertions, there is no reason for it to reach the last issue.

■ First, section 117 makes clear on its face that its direction to apply pre-1978 law is not to apply to sections 101 and 102 of the act, which, as previously noted, clearly allows a program in this form to be copy-

righted and protected. The legislative history confirms this interpretation. House Report No. 1476, *supra,* at 116, *reprinted in* [1976] *U.S.Code, etc., supra,* at 5731. Section 117 modified only sections 106 through 116 and 118, which are the sections concerned with the scope of copyright protection. Defendants correctly pointed out in their papers that it would "not make any logical sense" to suggest that Congress meant, by enacting section 117, to allow computer programs fixed in this manner to be copyrighted, but to then not afford them any protection. Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, filed July 31, 1981, at 4–5. The court, however, does not agree with defendants' conclusion therefrom that the court is to look to pre-1978 law, and not to sections 101 and 102 of the 1976 act, to determine whether the ROM chip is a "copy." Instead, the court is convinced that the Congress was only addressing itself in section 117 of the 1976 act to the problems surrounding the input into computers of properly obtained copyrighted materials.

The legislative history and the subsequent revision of section 117 clearly indicates that the Congress was concerned with the issue of the rights of a copyright holder when copyrighted material is inputted into a computer. The House Report indicates that the Congress was uncertain what to do about "computer *uses* of copyrighted works." House Report No. 1476, *supra,* at 116, *reprinted in* [1976] *U.S.Code and Admin.News, supra,* at 5731 (emphasis added). Moreover, when the section was revised in 1980, the new language defined the extent to which a computer program could be inputted into a computer system by a rightful owner of a copy of the program. P.L. 96–517, 94 Stat. 3015, 3028–29. Most importantly, the actual language of the original section 117 refers to use of copyrighted material "in conjunction with" computer-type systems.

■■ All of this evidence convinces the court that section 117, as it existed in the

---

* This language in section 117 was repealed in 1980. *See* P.L. 96–517, 94 Stat. 3015. There is

no claim that this amendment is applicable to this matter.

1976 act, was aimed at the problem of copyrighted material inputted into a computer, such as books, magazines, and even computer programs. It was not intended to provide a loophole by which someone could duplicate a computer program fixed on a silicon chip. It did not refer to the unauthorized duplication of a silicon chip upon which a properly copyrighted computer program is imprinted. Such a *duplication* of a chip is not the use of a copyrighted program "in conjunction with" a computer; it is simply the copying of a chip. Moreover, any other interpretation would render the theoretical ability to copyright computer programs virtually meaningless. *See* 2 *Nimmer on Copyright* § 8.08, at 8–106.3— 8–106.4.

The court recognizes that another district court has held differently. *Data Cash Systems, Inc. v. JS&A Group, Inc.*, 480 F.Supp. 1063 (N.D.Ill.1979). However, the Court of Appeals, in considering the same case, noted that neither side had briefed or argued the matter based on the reasoning of the district court, and it explicitly stated that it was not passing on the merits of the district court's ruling. *Data Cash Systems, Inc. v. JS&A Group, Inc.*, 628 F.2d 1038, 1041 (7th Cir. 1980). Moreover, it is arguable that the basis upon which the Seventh Circuit affirmed the lower court's decision requires implicitly the rejection of the reasoning relied on by the district judge. *See* 2 *Nimmer on Copyright*, at 8–106.3 n.18. This court is not compelled to follow the reasoning of the district court in Illinois, nor are we convinced of the merits of the basis of that decision.

There is an additional reason for rejecting this motion to dismiss. Whatever the merits of the defendants' argument concerning the direct duplication of the silicon chip, the plaintiff has suggested that the evidence may well show that the chip was duplicated by first taking a visual display or printout of the program in question, making a copy of that display or printout, and then having that program imprinted onto a silicon chip. This theory of duplication falls within the pleading of the complaint, which simply indicates that the program imprinted on the plaintiff's ROM chip is duplicated on the defendants' ROM chip. If this method of unauthorized duplication in fact is proved, there can be no doubt that the unauthorized duplication of a visually displayed copy of the program would fall within the reach of the federal copyright laws.

Therefore, for both these reasons, the motion to dismiss is denied.

SO ORDERED.