**In re AVALON SOFTWARE
INC., Debtor.**

**Bankruptcy No. 96–2099 TUC LO.**

United States Bankruptcy Court,
D. Arizona.

June 6, 1997.

Eileen W. Hollowell, Mesch, Clark & Rothschild, P.C., Tuscon, AZ, for Creditors' Committee.

Eric S. Sparks, Law Office of Eric Sparks, Tuscon, AZ, for Imperial Bank.

## MEMORANDUM DECISION RE: MOTION FOR PARTIAL SUMMARY JUDGMENT

JAMES M. MARLAR, Bankruptcy Judge.

On May 27, 1997, the court considered counsels' arguments on the unsecured creditors' committee's Motion for Partial Summary Judgment[1]. The bank filed a Cross–Motion for Summary Judgment. The parties were represented by: Eddward Ballinger, Jr., attorney for debtor; Eileen W. Hollowell, attorney for unsecured creditors' committee; Eric S. Sparks, attorney for Imperial Bank; and Richard E. Oney, special counsel for debtor. In considering this matter, the court reviewed the Motion (Dkt.246), Imperial Bank's Response (Dkt.272), the committee's Reply, the bank's Reply, the declarations, transcript and exhibits. In addition, the court reviewed the legal authorities cited by the parties. The court now rules.

### FACTS

1. Avalon was in the business of developing, for businesses, computer software for inventory control, from purchasing through manufacture to sale, and collection and accounting.

2. Prior to filing chapter 11, Avalon had borrowed money from Imperial Bank. Once Avalon filed, Imperial was left with a debt of $1,483,662.

3. In order to secure the credit, the bank, on September 28, 1994, was granted a security interest in Avalon's personal property, including accounts, general intangibles, equipment, inventory, and proceeds. (Ex. B to Motion). The security agreement contained a standard "after-acquired" clause.

4. The bank filed a UCC–1 financing statement with the Arizona Secretary

Eddward Ballinger, Jr., Brown & Bain, P.A., Phoenix, AZ, for Debtor.

---

1. The parties have stipulated to the procedures in this case, which the court has approved. Ordinarily, an Adversary Complaint would be required. Rule 7001(2), Fed.R.Bankr.P.

of State on October 19, 1994. (Ex. C to Motion).

5. The bank never filed a financing statement, its security agreement, or any other document evidencing its security interest with the United States Office of Copyright. (Ex. D to Motion).

6. Avalon registered its copyrights on its intellectual property between 1986 and 1991. Thereafter, Avalon did not register copyrights on its newly developed products, or modifications to its previous versions.

7. On September 9, 1996, this court approved a sale of essentially all of Avalon's business assets, free and clear of liens, to IFS. All valid and existing liens, however, nonetheless attached to the proceeds. The purchase price was $1,850,000, plus 50% of the gross proceeds collected from the accounts receivable sold to IFS.

## LEGAL ISSUES

1. Is the bank's security interest perfected in Avalon's copyrighted *software* and its proceeds?

2. Is the bank's security interest perfected in Avalon's *updates, modifications amendments,* or *enhancements* to Avalon's *copyrighted* software and its proceeds?

3. Is the bank's security interest perfected in Avalon's *non-copyrighted software* and its proceeds?

4. Is the bank's security interest perfected in Avalon's *updates, modifications, amendments,* or *enhancements* to Avalon's *non-copyrighted software* and its proceeds?

5. Is the bank's security interest perfected in Avalon's accounts receivable derived from *service and maintenance agreements?*

6. Is the bank's security interest perfected in Avalon's *equipment* and *inventory?*

## DISCUSSION

### Copyrights, Security Interests and Bankruptcy

#### A. Copyright Law

The protections afforded by copyright are matters of federal law. 17 U.S.C. § 101 *et seq.* Like bankruptcy law, protection to authors and inventors was specifically provided for in the Constitution. U.S. Const. Art. I, § 8. In spite of their long histories, however, clashes between creditors and debtors in the copyright area have been rare. This case highlights some of the issues that can occur in litigation which is filed in the bankruptcy arena.

 Copyright protection exists and subsists in tangible, expressed works of authorship. 17 U.S.C. § 102(a); *Dollcraft Industries, Ltd. v. Well–Made Toy Manufacturing Co.,* 479 F.Supp. 1105, 1113 (E.D.N.Y. 1978) (quoting *Uneeda Doll Co. v. P. & M. Doll Co.,* 353 F.2d 788, 789 (2d Cir.1965)). A computer program is a work of authorship subject to copyright. *Tandy Corp. v. Personal Micro Computers, Inc.,* 524 F.Supp. 171, 173 (N.D.Cal.1981); *TDS Healthcare Systems Corp. v. Humana Hospital Illinois, Inc.,* 880 F.Supp. 1572, 1581–82 (N.D.Ga. 1995) (citing *CMAX/Cleveland, Inc. v. VCR, Inc.,* 804 F.Supp. 337, 358 (M.D.Ga.1992)). In order for an author or creator to be entitled to obtain the protection of a copyright, no registration is necessary for it to exist for a term of years. 17 U.S.C. § 302. However, in order to *enforce* an infringement claim against another, registration is a prerequisite. 17 U.S.C. §§ 410, 411. Such registration is not, however, a condition of copyright protection. 17 U.S.C. § 408(a). Once a copyright is applied for, a deposit is made, and the Register of Copyrights has issued a certificate, an action for infringement may be made. 17 U.S.C. § 411.

#### B. Security Interests Under Copyright Law

 If a creditor undertakes to obtain a security interest in a copyrighted work, it must comply with both the Uniform Commercial Code and federal copyright law. That is, in order for a security interest to

attach, there must be value given, the debtor must have rights in the collateral, and there must be an agreement signed by the debtor. *Ariz.Rev.Stat.* § 47–9203(A). Under federal copyright law, the grant of a security interest is defined as a "transfer of copyright ownership," because within copyright law that term includes mortgages or other forms of hypothecation. 17 U.S.C. § 205. If the copyright has been registered, and if the document adequately identifies the property in which the security interest is taken, the recordation of the security interest serves to impart constructive notice to the world of the existence of the security interest. 17 U.S.C. § 205(c).

## C. Security Interests Under Arizona Law

■ Avalon is an Arizona corporation with its principal place of business in Arizona. Its assets and operations are located in Arizona. Perfection of a secured creditor's rights occur when evidence of the security interest is filed in the appropriate governmental office. *Ariz.Rev.Stat.* § 47–9303(A). In the usual business case, the type of collateral taken as security is properly filed in the office of the Secretary of State. *Ariz.Rev.Stat.* § 47–9401(A)(3). A properly filed financing statement remains effective, without renewal, for six years. *Ariz.Rev.Stat.* § 47–9403. However, except as to secured property on hand as of the date of filing, or acquired thereafter from sales made prior to or after the filing, the general rule is that all security interests are cut off as of the filing date. 11 U.S.C. § 552(a).

■ But, the usual perfection requirements are different if the property is subject to either a state or federal statute which requires central filing in another registry or location. *Ariz.Rev.Stat.* § 47–9302(C)(1). The most typical example of this exception in Arizona is the Motor Vehicle Department's central registration of liens on motor vehicles. *See Ariz.Rev.Stat.* § 28–325; § 47–9302(C)(2). Arizona's Uniform Commercial Code filing location requirements are inapplicable "[t]o a security interest subject to any statute of the United States...." *Ariz.Rev. Stat.* § 47–9104(1). In other words, if another statutory means of filing is covered by another state or federal statute, then the

usual UCC methods are superceded, and, in the case of federal statutes, preempted.

## D. Bankruptcy of the Debtor

■ If a security interest is not properly perfected, it becomes subordinate to the rights of a bankruptcy trustee (or debtor-in-possession) whose principal purpose is to maximize a debtor's estate for the benefit of the unsecured creditors. *Ariz. Rev.Stat.* § 47–9301(A)(2); § 47–9301(C); 11 U.S.C. § 544; *Nattional Peregrine, Inc. v. Capitol Federal Savings and Loan Association of Denver, (In re Peregrine, Entertainment, Ltd.* 116 B.R. 194 (C.D.Cal.1990)).

## E. Perfection in a Copyright Against a Trustee

■ The proper method, then, for a secured creditor to obtain a perfected security interest in either copyrighted or copyrightable property is to register that security interest with the United States Copyright Office. 17 U.S.C. § 205. This protection also extends to the proceeds naturally derived from the copyrighted material. An additional requirement is that the copyright also be registered. 17 U.S.C. § 205(c).

Imperial Bank argues that if Avalon failed to register any of its copyrightable material or software, that it (or its Trustee) is not entitled to the "other central registry" exception of the UCC. The bank then maintains that, because of the failure actually to register a product which is capable of registration, it then becomes something else—perhaps a general intangible—which *was* perfected and which could *only* be perfected by filing with Arizona's Secretary of State.

■ This court holds that a product to which a copyright attaches, such as computer software, acquires its character as "copyrightable" when the intellectual work is created. 17 U.S.C. §§ 101, 201(a). Importantly, registration "is not a condition of copyright protection." 17 U.S.C. § 408(a). Thus, a product which is entitled to be registered at the U.S. Copyright Office, but is not, does not carry a different "label" or become something different solely because it was not registered at the U.S. Copyright Office. *Ze-*

nith Productions, Ltd. v. AEG Aquisition Corp. (In re AEG Acquisition Corp.), 161 B.R. 50, 56 (9th Cir.BAP1993)). In other words, a security interest in such an item is unperfected if filed or recorded anywhere other than at the U.S. Copyright Office. Attempting to call such product a "trade secret" does not change the requirement for security-interest filing at the Copyright Office. The burden to perfect properly is entirely on the secured creditor in such an instance. It is immaterial whether the debtor has registered its material. Perfection and constructive notice to the world is accomplished by the creditor's satisfaction of two requirements: (1) documenting the security interest with the U.S. Office of Copyright, and (2) insuring that a registration of the copyrighted product has also been made at the U.S. Copyright Office.

■ Therefore, as to all Avalon property which the bank was required to perfect at the U.S. Copyright Office, but which it did not, Imperial Bank is unperfected, and it is an unsecured creditor to the extent of that property interest and any sale proceeds.

### F. Derivative or Offshoot Intellectual Property

■ The next issue raised by Imperial Bank may be addressed easily. The bank contends that intellectual property which is an enhancement, an offshoot, or a modification to an existing program does not rise to the level of a mature program. This distinction, however, is not material. Whether the new product is a completely new and mature program, or an accessory to an older, copyrighted or non-copyrighted program, any security interest therein must be filed with the U.S. Copyright Office in order to be perfected as against a bankruptcy trustee. An "after-acquired" clause would protect the bank if it had initially properly filed its security interest at the Copyright Office. All such subsequent, various versions are dependent upon each other in order to operate the software. Thus, there is no logical way to separate them into categories, some of which are required to be filed in Washington, D.C., and some in Phoenix, Arizona. Moreover, this argument is inconsistent with the intent of the Uniform Commercial Code, which is to require filing in logical, statutory places in order to give notice to the world of a claim or interest. See Peregrine, supra, 116 B.R. at 200. The bank's argument simply elevates form (labels) over substance (what the product does or is intended to do).

### G. With Regard to the Debtor's Interest, Registration of The Copyright is Irrelevant

The bank confuses the protection available to a copyright owner who registers its interest with the perfection of a secured creditor's rights, which is obtained by filing in a specific location. However, as federal law mandates, in order to claim a perfected security interest, a creditor must file that interest with the U.S. Copyright Office. 17 U.S.C. § 205. Ultimate perfection may depend upon registration of the product, but this burden is one which is placed exclusively upon the creditor. If each step is not complied with, the creditor is denied the presumption of constructive notice. If a security interest is not so filed, the creditor is left unperfected and its claim to such property is subordinate to a trustee or debtor-in-possession who exercises the "strong arm" powers of § 544 of the Bankruptcy Code. 17 U.S.C. § 205; Peregrine, supra, 116 B.R. at 204–07. The bank contends that a filed security interest which was not somehow attached to a registered copyright is equivalent to a "wild deed," or is a headless horseman, and that it was unable to document its interest until the debtor registered the product. However, the bank has provided no legal support for this contention. Indeed, the Uniform Commercial Code provides that a security interest may be filed against property not even in existence at the time that the security interest is filed. See, e.g., Ariz.Rev.Stat. § 47–9204; Valley National Bank of Arizona v. Flagstaff Dairy, 116 Ariz. 513, 518, 570 P.2d 200, 205 (App.1977) (security interest is perfected when collateral comes into existence and debtor acquires rights in it). In this case, the bank's security interest contained an "after-acquired" security provision. Federal copyright law does not change that

right, nor does it appear to alter those provisions of the UCC.

 The bank's argument that perfection of registered copyrights is governed by federal law, while unregistered copyrights are governed by state law, is rejected. No authority was cited for this novel proposition, and federal law makes no such distinction. Indeed, as the court stated in *Peregrine,* to accept this argument would throw Congress' requirement for central filing of security interests in copyright material into chaos[2]. 116 B.R. at 200. Federal law is clear and well-settled that state laws, which come within the scope of federal copyright laws, are preempted. *Maljack Productions, Inc. v. GoodTimes Home Video Corp.,* 81 F.3d 881, 888 (9th Cir.1996). *See also Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655, 658–59 (4th Cir.1993), *cert. den.* 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 377 (1993). Imperial Bank is therefore unperfected as to Avalon's copyrighted, copyrightable, registered or unregistered computer software products. If Imperial Bank had merely done what the law requires—that is, to record evidence of its security interest in the U.S. Office of Copyright—and had it made sure that the after-acquired property had been registered, it would have been found to be perfected. All it had to do was determine what its collateral consisted of, consult the law, and perfect its interest. It failed to take those simple steps, and it is now unperfected as a result.

### H. Maintenance and Consulting Agreements

 When Avalon licensed its intellectual property to an end user, its license agreement would typically allow the licensee to purchase a maintenance agreement separately. (See, Ex. 4, para. 13, to Motion. *See also* Section 4 to Ex. 4 to Motion, "Avalon Maintenance Agreement"). This agreement contained separate covenants for general and routine support and maintenance of the licensed programs and software. Avalon charged a separate fee for this service, and

the decision whether to purchase this servicing agreement was optional to the licensee/end user. It covered a service only, and did not involve, require, or significantly include the sale or licensing of any tangible "intellectual property" other than the expertise of the personnel who carried out maintenance under such agreements. Accordingly, accounts or receivables created by the servicing and maintenance agreements were properly perfected by Imperial Bank.

### I. The Bottom Line

Thus, it can be concluded that the bank is perfected and unperfected as follows:

| PERFECTED | UNPERFECTED |
|---|---|
| 1. Equipment | 1. Copyrighted Avalon Software[3] |
| 2. Inventory (with the exception of the items and their proceeds specified in the "unperfected" category). This includes, however, programs developed by another entity which Avalon merely resold or sublicensed. | 2. Copyrighted Avalon Derivative Software |
| 3. Accounts (with the exception of proceeds from the "unperfected" category) | 3. Copyrighted Avalon Modified Software |
| 4. General intangibles (with the exception of proceeds from the "unperfected" category) | 4. Copyrighted Avalon Enhanced Software |
| 5. Accounts relating to maintenance agreements | 5. Non-copyrighted Avalon Software |
| 6. Customer lists, prospect lists, marketing plans, forecasts and assumptions, and lists of suppliers and subcontractors | 6. Non-copyrighted Avalon Derivative Software |
| 7. All accounts and receivables from maintenance fees associated with VAR Distributorship Agreements, unless a portion of any sale price included any intellectual property added by Avalon | 7. Non-copyrighted Avalon Modified Software |
| 8. All accounts and receivables from general maintenance agreements with all other customers, licensees, and end users | 8. Non-copyrighted Avalon Enhanced Software |
| 9. Consulting Agreements and proceeds therefrom | 9. Licenses attributable to through 8, above |
| | 10. Proceeds from sales of 1 through 9, above |
| | 11. Trademarks, service marks and identifying |

---

**2.** Although *Peregrine* is a case from the Central District of California, the judge was Alex Kozinski, a Ninth Circuit judge sitting by designation.

**3.** The term "Avalon Software" is meant to be an all-inclusive term relating to the debtor's owned software, by whatever name it was known.

**PERFECTED** **UNPERFECTED**

marks and names of items 1 through 8, above

12. All knowhow, unpatented or uncopyrighted inventions, trade secrets or intellectual property of items 1 through 8, above.

13. All user manuals, brochures or other documentation or written information concerning or related to items 1 through 9 and 12, above

14. All permits, authorizations or approval, public or private, related to items 1 through 9 and 11 through 13, above

15. All sales agreements and proceeds relating to items 1 through 9, and 11 through 14, above

16. All marketing materials related to items 1 through 15, above

17. VAR Distributor Agreements and proceeds therefrom, which include calculable and measurable additions of Avalon software

Based upon the foregoing, there now remains for trial, or for further motions, the question of how much of the IFS sales proceeds are attributable to the various categories set forth above. The court is not persuaded by the parties' witnesses' conclusory statements that there should be an arbitrary 60/40, or some other ratio, split of the sales proceeds, or that such statements provide the necessary proof to support the granting of summary judgment in specific dollar amounts. Rather, it is fair, equitable, and legally required that a trial be held on the exact amounts attributable to these various categories. Therefore, no monetary amounts will be ascribed to any item of perfected or unperfected property without a further evidentiary hearing, or a stipulation to that effect.

Counsel for the creditors' committee shall submit, within 20 days, an appropriate form of order consistent with this Memorandum Decision.