**In re TOGETHER DEVELOPMENT CORPORATION, Debtor.**

**Bankruptcy No. 97–47830–JFQ.**

United States Bankruptcy Court,
D. Massachusetts.

Dec. 4, 1998.

Daniel S. Black, Riemer & Braunstein, Boston, MA, for Debtor.

## DECISION

JAMES F. QUEENAN, Bankruptcy Judge.

This case presents the question of the proper method of perfecting a security interest in trademarks. The subject involves a trap for the unwary.

By previous order, the court authorized Together Development Corporation (the "Debtor") to sell substantially all its assets, including its trademark "Together Dating Service", free of the security interest of Horace Trimarchi ("Trimarchi"). The order attached the security interest to the sales proceeds. The order also set down an evidentiary hearing so the court could adjudicate the validity and perfection of Trimarchi's security interest. Set forth here are my findings of fact and conclusions of law following that hearing.

The case was submitted on agreed exhibits and an oral stipulation of facts. Trimarchi is a former shareholder of the Debtor. By agreement dated May 13, 1986, the Debtor purchased all its shares owned by Trimarchi (and two others). The price for Trimarchi's shares was $200,000, which was represented

by the Debtor's promissory note in that amount bearing interest at 10% per annum and payable in 780 weekly installments of $500. In consideration of other indebtedness owed Trimarchi, the Debtor gave him its promissory note in the sum of $30,372.12, also bearing interest at 10% and payable in 780 weekly installments. Both notes were secured by the Debtor's "accounts receivable, it's [sic] Trademark, Franchise Fees and Royalties." In furtherance of that security interest, the Debtor executed and delivered to Trimarchi a separate assignment which described the assigned property as the Debtor's "Trademark (Together Dating Service) ... which is registered under Certificate Number 1,145,365 in the United States Patent Office transfer said mark [sic], along with the goodwill of the business connected with that mark...." The Debtor also gave to Trimarchi a signed financing statement (UCC–1) covering the following described collateral: "All fixtures, office furniture, files, etc., accounts receivable, Franchise Fees, Royalties, License Fees, Franchise Agreements, License Agreements, and 'TOGETHER' Trademark—Registration number 1,145,365."

■ Trimarchi did not make a filing with the Secretary of State of Connecticut, where the Debtor's principal office was then located, nor with any other state. Instead, he filed the financing statement by mail with the United States Patent and Trademark Office ("PTO"), which sent back a written acknowledgment of the filing. There is no dispute that Trimarchi's security interest in items of property other than the trademark is unperfected for lack of recording with the appropriate state authority. The question is whether the filing with the PTO was sufficient to perfect his security interest in the trademark.

The parties' agreement provides that it "shall be interpreted under the Laws of the State of New York...." The agreement does not state it shall be "governed" by New York law. Because there is no essential difference among the states on the point at issue, I assume, as urged by Trimarchi, that the agreement is governed by New York law in all respects. If a federal statute contains filing requirements for particular collateral, U.C.C. § 9–302(3) defers to the federal statute. As in effect in New York, section 9–302(3) provides as follows:

> (3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to
>
> > (a) a statute or treaty of the United States which provides for a national or international registration or a national or international certificate of title or which specifies a place of filing different from that specified in this Article for filing of the security interest
>
> .    .    .    .    .
>
> (4) Compliance with a statute or treaty described in subsection (3) is equivalent to the filing of a financing statement under this Article, and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith except as provided in Section 9–103 on multiple state transactions. Duration and renewal of perfection of a security interest perfected by compliance with the statute or treaty are governed by the provisions of the statute or treaty; in other respects the security interest is subject to this Article.

N.Y. U.C.C. Law § 9–302(3)–(4) (McKinney 1997).

The "Lanham Act," chapter 22 of Title 15 of the United States Code, governs trademarks. Its provision on the transfer of an interest in a trademark reads in relevant part as follows:

> A registered mark or a mark for which application to register has been filed shall be assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark[,]. However, no application to register a mark under section 1(b) [15 USCS § 1051(b) ] shall be assignable prior to the filing of the verified statement of use under section 1(d) [15 USCS § 105(d) ], except to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that

business is ongoing and existing.... An assignment shall be void as against any subsequent purchaser for a valuable consideration without notice, unless it is recorded in the Patent and Trademark Office within three months after the date thereof or prior to such subsequent purchase....

15 U.S.C.S. § 1060 (Law.Co-op.1991).

The Lanham Act contains no definition of "assignment," thereby casting doubt on whether the term includes the grant of a security interest. The question therefore is this: Is its provision on transfer a statute which, in the words of U.C.C. § 9–302(3), "specifies a place of filing different from that specified in this Article for filing of the security interest"?

I have been directed to no pertinent legislative history. In the abstract, the term "assignment" is broad enough to include the granting of a consensual lien. *See* BLACK'S LAW DICTIONARY 1342 (5th ed.1979) (defining term as "[a] transfer ... of the whole of any property ... or any estate or right therein."). It is helpful, however, to have some history in mind. The Lanham Act was passed in 1946, prior to the general passage by the states of the Uniform Commercial Code, which uses the phrases "security agreement" and "security interest" to describe the granting of a consensual lien in personal property. In 1946, a "chattel mortgage" or "conditional sale" was the vehicle through which most consensual personal property liens were granted. Outside the sales context, to describe the grant of a security interest it was then common to refer to the grant of a "mortgage" rather than an "assignment," the term used in the Lanham Act. The term "hypothecation" was often used with respect to receivables. Thus ordinary language usage points away from treating the grant of a security interest as an "assignment" under the Lanham Act.

Two other considerations indicate the statute does not apply to security interest filings. First, its reference to the "successor to the business" suggests Congress had in mind an outright assignment in the context of the sale of an entire business of which the trademark is a part. Second, and perhaps more persuasive, Congress has expressly included consensual liens in the copyright recording system, thereby demonstrating its awareness of the possibility of such liens and its inclination to make manifest an intention to require their recording when that intention is present. *See* 17 U.S.C.S. § 205 (Law.Co-op.1978) (providing for recording of "transfer" of copyright); 17 U.S.C.S. § 101 (Law.Co-op.1978) (defining "transfer" to include "mortgage" or "hypothecation").

I therefore conclude that Trimarchi's security interest in the trademark is unperfected. The case law appears to be in uniform agreement. *See Joseph v. 1200 Valencia, Inc. (In re 199Z, Inc.)*, 137 B.R. 778 (Bankr.C.D.Cal. 1992); *In re Chattanooga Choo–Choo Co.*, 98 B.R. 792 (Bankr.E.D.Tenn.1989); *In re C.C. & Co., Inc.*, 86 B.R. 485 (Bankr.E.D.Va.1988); *Roman Cleanser Co. v. National Acceptance Co. (In re Roman Cleanser Co.)*, 43 B.R. 940 (Bankr.E.D.Mich.1984), *aff'd on other grounds*, 802 F.2d 207 (6th Cir.1986); *Creditors' Committee v. Capital Bank (In re TR–3 Industries, Inc.)*, 41 B.R. 128 (Bankr. C.D.Cal.1984).

Pointing to the national filing requirement for security interests in copyrights, Trimarchi suggests that a similar requirement for trademarks makes a great deal of sense. He cites a copyright case, *National Peregrine, Inc. v. Capitol Federal Savings and Loan Association (In re Peregrine Entertainment, Ltd.)*, 116 B.R. 194 (C.D.Cal.1990). In that case, in the process of holding that filing with the United States Copyright Office is the proper method for perfection of security interests in copyrights, the district court espoused the virtues of mandatory national filing of such security interests. Those virtues may also be present as to trademarks. A proposed purchaser or lender might well find it more convenient and reliable to have just one filing office at which to ascertain both the registered ownership of a trademark and the existence of encumbrances on it. But my job is to apply the statute as Congress has written it. The *Peregrine* court was careful to point out the absence of any reference to security interests in the trademark statute and the consequent irrelevance of trademark cases. *See* 116 B.R. at 204, n. 14. *See also In re Avalon Software Inc.*, 209 B.R. 517

**442**

(Bankr.D.Ariz.1997) (holding PTO proper place for filing for security interest in copyright).

It is of course unfortunate that the trademark statute is sufficiently vague to require judicial interpretation. This produced the understandable mistake made here. Security interests in patents present the same difficulty. *See* 35 U.S.C.S. § 261 (Law. Co-op.1981 & Supp.1998) (requiring recording for "assignment" of patents without furnishing definition of "assignment"); *In re Transportation Design and Technology, Inc.*, 48 B.R. 635 (Bankr.S.D.Cal.1985) (ruling that filing with state, not PTO, perfects security interest in patents against subsequent lien creditor, but not against subsequent bona fide purchaser). Not even the copyright statute is totally consistent with the Uniform Commercial Code. All three statutes should be amended to place them in better harmony with the Code. *See* Alice Haemmerli, *Insecurity Interests: Where Intellectual Property and Commercial Law Collide*, 96 COLUM. L. REV. 1645 (1996) (noting difficulties and various proposals for reform). The problem was emphasized long ago in a leading treatise. *See* 1 Grant Gilmore, *Security Interests in Personal Property* § 13.1 (1965) (stating statutes such as copyright and patent statutes "pose intricate and difficult problems with respect to the interrelationship of state and federal law and the jurisdiction of state and federal courts—problems which remain largely unsettled and indeed unexplored.").

 Being unperfected, Trimarchi's security interest is "subordinate" to a "person who becomes a lien creditor before the security interest is perfected." N.Y. U.C.C. Law § 9–301(1) (McKinney 1997). As debtor in possession, the Debtor has the "rights" and "powers" of a trustee. 11 U.S.C.S. § 1107 (Law. Co-op.1997). A trustee, in turn, has the "rights and powers of, or may avoid any transfer of property of the debtor ... that is voidable ... by a [lien creditor]." 11 U.S.C.S. § 544(a)(1) (Law.Co-op.1997). Hence Trimarchi's security interest is subordinate to the Debtor's rights as a lien creditor, and the Debtor may avoid that security interest. Avoidance should normally be accomplished through an adversary proceeding. Fed. R. Bankr.P. 7001(2). For the sake of simplicity, however, at the hearing on the Debtor's sales motion, to which Trimarchi was an objecting party, I dispensed with the necessity of further pleadings. Trimarchi has not objected to this procedure.

An order has accordingly issued declaring Trimarchi's security interest in the trademark (as well as other collateral covered by the parties' agreement) invalid by reason of lack of perfection.