In re WORLD AUXILIARY POWER COMPANY, World Aerotechnology Corporation, Air Refrigeration Systems, Inc., Debtors.

Aerocon Engineering Inc., Plaintiff,

v.

Silicon Valley Bank, etc., et al., Defendant.

Bankruptcy Nos. 96–46735 TK to 96–46737 TK. Adversary Nos. 98–4753 AT to 98–4755 AT.

United States Bankruptcy Court, N.D. California, Oakland Division.

Dec. 30, 1999.

Merle C. Meyers, Goldberg, Stinnett, Meyers & Davi, San Francisco, CA, for Debtor.

Steven N. Kurtz, Greenberg & Bass, Encino, CA, for Plaintiff.

Shawn Christenson, Buchalter, Nemer, Fields & Younger, San Francisco, CA, for Silicon Valley Bank.

John T. Kendall, Alameda, CA, trustee.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

In these adversary proceedings, Plaintiff Aerocon Engineering Inc. ("Aerocon") seeks to avoid the security interest of Defendant Silicon Valley Bank (the "Bank") in certain unregistered copyrights (the "Copyright") pursuant to 11 U.S.C. § 544(a)(1).[1] Aerocon and the Bank have filed cross-motions for summary judgment. For the reasons stated below, the Court finds that the Bank's security interest is perfected. Therefore, Aerocon may not avoid it pursuant to 11 U.S.C. § 544(a)(1).

## SUMMARY OF FACTS

The above-captioned debtors (the "Debtors") are corporate affiliates. They filed voluntary petitions seeking relief under chapter 11 of the Bankruptcy Code in August 1996. In September 1996, all three cases were converted to chapter 7, and chapter 7 trustees were appointed. Prior to the chapter 11 filings and conversion of the cases to chapter 7, the Debtors designed, manufactured, and sold aircraft related products. In the process, the Debtors acquired the Copyright. The Copyright was embodied in drawings, blueprints, and computer software which were used to acquire Supplemental Type Certificates from the Federal Aviation Administration. The Supplemental Type Certificates permitted the Debtors to make modifications to a particular airplane type.[2] The Debtors did not register the Copyright with the United States Copyright Office (the "Copyright Office").

Prior to the commencement of these bankruptcy cases, the Bank loaned money to two of the Debtors. The third Debtor guaranteed the loans. The Debtors executed security agreements (the "Security Agreement"), giving the Bank a security interest in the Copyright, among other things, to secure their obligations under the loan and guaranty agreements. The Debtors also executed UCC–1 financing statements (the "UCC–1") which the Bank filed with the California Secretary of State (the "UCC Office"). The Bank did not record the Security Agreement or UCC–1 in the Copyright Office.

On April 14, 1997, the Court approved the sale by the bankruptcy trustees of most of the assets of the three bankruptcy estates, including the Copyright and the trustees' avoiding powers with respect to the Bank's security interest in the Copyright under 11 U.S.C. § 544(a)(1). Aerocon alleges that it is the successor-in-interest to the parties who purchased the Copyright and the related avoiding powers.[3]

## APPLICABLE LAW

### A. SUMMARY JUDGMENT LAW

The legal principles to be applied in determining a motion for summary judg-

---

**1.** Section 544(a)(1) of the Bankruptcy Code provides that: "The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor...that is voidable by-(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;...." 11 U.S.C. § 544(a)(1).

**2.** For a more detailed explanation of the process by which the Federal Aviation Administration approves airplane design and manufacture and of the role that a Supplemental Type Certificate plays in this process, see *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 898–900 (9th Cir. 1992).

**3.** The Bank does not dispute that, with court approval, a bankruptcy trustee can transfer his or her avoiding powers to a third party. *See In re Professional Inv. Props. of America*, 955 F.2d 623 (9th Cir.), *cert. denied sub nom.*

ment are well established and are not in dispute. A motion for summary judgment should be granted when it appears that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this instance, the parties agree that summary judgment is appropriate. None of the material facts is in dispute.[4]

## B. COPYRIGHT LAW

The owner of a copyright is permitted to register the copyright with the Copyright Office but is not required to do so. *See* 17 U.S.C. § 208(a).[5] The transfer of ownership of a copyright may be recorded with the Copyright Office whether or not the copyright is registered. *See* 17 U.S.C. § 205(c). The Copyright Act defines "the transfer of ownership of a copyright" to include the transfer of a security interest. *See* 17 U.S.C. § 101.

If the copyright is registered and the transfer of ownership of a copyright is recorded, the recordation gives third parties constructive notice of the transfer. *See* 17 U.S.C. § 205(c). In the event of conflicting transfers, priority is given to the first transfer executed provided: (1) the transfer is recorded within 30 days of

the date of execution in a manner sufficient to give third parties constructive notice[6] and (2) the transferee: (a) received the transfer in good faith, (b) for valuable consideration, and (c) without notice of the prior transfer. *See* 17 U.S.C. § 205(d).

## DISCUSSION

■ The question presented by these cross-motions is whether the Bank perfected its security interest in the Copyright by filing the UCC–1 in the UCC Office. If it did, Aerocon cannot avoid the Bank's security interest pursuant to 11 U.S.C. § 544(a)(1). *See* Cal. Com.Code § 9312(5)(a). If the Bank's security interest is unperfected, Aerocon may avoid it under 11 U.S.C. § 544(a)(1). *See* Cal. Com.Code § 9302(1)(b), (3).[7] In either instance, as discussed below, because the copyright was unregistered, the priority of the conflicting transfers must be determined under state law. See section A below. For similar reasons, as discussed below, the Court concludes that a secured creditor may perfect a security interest in an unregistered copyright in accordance with state law, by filing a UCC–1 financing statement with the UCC Office. See section B below.

## A. PRIORITY OF CONFLICTING TRANSFERS OF OWNERSHIP IN UNREGISTERED COPYRIGHT

The issues presented here were first addressed in *In re Peregrine Entertain-*

*Miller v. Briggs,* 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992).

4. The Bank filed a declaration in support of its motion for summary judgment. Aerocon filed objections to that declaration. The Court declines to rule on those objections because it finds the declaration irrelevant to its decision.

5. However, the owner of a copyright must register the copyright if it wishes to sue a third party for copyright infringement. *See* 17 U.S.C. § 211.

6. The transfer may be recorded within 60 days of the date of execution if the transfer was executed outside the United States.

7. Section 9301(1)(b) of the California Commercial Code provides that an unperfected security interest is subordinate to the interest of a lien creditor. Section 9301(3) defines "lien creditor" to include a creditor who has acquired a lien on the property by levy. As discussed in *Peregrine,* a hypothetical judicial lien creditor could obtain a lien on an unregistered copyright by levying a writ of execution in accordance with the procedures set forth under state law with respect to general intangibles. *See Peregrine,* 116 B.R. at 205–06 n. 16.

*ment, Ltd.*, 116 B.R. 194 (C.D.Cal.1990). The *Peregrine* court held that a security interest in a copyright could not be perfected by filing a UCC–1 financing statement in the UCC Office and could only be perfected by recording the transfer of the security interest in the Copyright Office. *Id.* at 198–204. The *Peregrine* court also held that a hypothetical judicial lien holder under 11 U.S.C. § 544(a)(1) could obtain a lien on a copyright superior to an unperfected security interest. Therefore, a trustee could avoid the unperfected security interest under 11 U.S.C. § 544(a)(1). *See id.* at 204–08.

The *Peregrine* court failed to specify whether the copyright in that case was registered with the Copyright Office.[8] However, the *Peregrine* court's analysis only works if the copyright was registered. This is most obvious in its analysis of the respective priorities of the hypothetical judicial lien holder under 11 U.S.C. § 544(a)(1) and the holder of an unperfected security interest.

The *Peregrine* court based its priority analysis on 17 U.S.C. § 205(d). It stated that:

> ...the UCC does not apply to the extent a federal statute 'governs the rights of parties to and third parties affected by transactions in particular types of property.' UCC § 9104. Section 205(d) of the Copyright Act is such a statute, establishing a priority scheme between conflicting transfers of interests in a copyright:....

*See id.* at 205. It concluded first that, by definition, a hypothetical judicial lien holder under 11 U.S.C. § 544(a) should be deemed to have received its lien in good faith, for valuable consideration, and without notice of the prior transfer. It then stated that the only remaining issue was

"whether...[the hypothetical judicial lien holder] could have recorded its interest in the Copyright Office...." *See id.* at 206. The *Peregrine* court concluded that the judicial lien holder could have recorded its interest in the Copyright Office and therefore that it could avoid the security interest of a secured creditor that failed to record its security agreement there. *See id.* at 206–08.

However, unless the copyright was registered in the Copyright Office, a hypothetical judicial lien holder's recordation of its lien in the Copyright Office would not give it any priority over an unperfected security interest in the same copyright under 17 U.S.C. § 205(d). As noted above, 17 U.S.C. § 205(d) only gives priority to a transfer of a security interest recorded in a manner sufficient to give constructive notice to third parties. Recordation of a security interest only gives constructive notice to third parties if the copyright is registered. *See* 17 U.S.C. § 205(c).

Subsequent to *Peregrine*, two bankruptcy courts addressed the issues presented here with respect to copyrights that were clearly unregistered. *See In re AEG Acquisition Corp.*, 127 B.R. 34 (Bankr.C.D.Cal.1991), *aff'd*, 161 B.R. 50, 58 (9th Cir. BAP 1993)[9]; *In re Avalon*, 209 B.R. 517 (Bankr.D.Ariz.1997). Both courts followed *Peregrine*, concluding that a security interest could only be perfected by recordation with the Copyright Office. Neither court considered whether it was appropriate to apply the *Peregrine* court's analysis to an unregistered copyright. *See AEG Acquisition*, 127 B.R. at 40–41; *Avalon*, 209 B.R. at 521–22.

It is unclear whether these two courts based their determinations of the respec-

8. The *Peregrine* court does, however, acknowledge that a security interest in a copyright may only be perfected by recordation in the Copyright Office if the copyright is registered. *See id.* at 200 n. 7.

9. The bankruptcy appellate decision, affirming the bankruptcy court, contained only a single paragraph directed to this issue. It noted that the bankruptcy court had relied on *Peregrine* and that that decision appeared well reasoned and on point. *See AEG Acquisition*, 161 B.R. at 58.

tive parties' priorities on state or federal law. In *AEG Acquisition*, the court stated that: "The Uniform Commercial Code...gives lien creditors priority over holders of unrecorded security interests." 127 B.R. at 43. However, like the *Peregrine* court, it then addressed the requirements for priority set forth in 17 U.S.C. § 205(d). Like *Peregrine*, in doing so, it failed to note the requirement that recordation of the judicial lien be in a manner sufficient to give constructive notice to third parties or to discuss how such recordation could be accomplished when the copyright was unregistered. *See id.* at 43–44.[10]

The *Avalon* court failed to discuss the priority issue at all. It merely stated that:

> If a security interest is not properly perfected, it becomes subordinate to the rights of a bankruptcy trustee (or debtor-in-possession) whose principal purpose is to maximize a debtor's estate for the benefit of the unsecured creditors. Ariz.Rev.Stat. § 47–9301(A)(2); § 47–9301(C); 11 U.S.C. § 544; *National Peregrine, Inc. v. Capitol Federal Savings and Loan Association of Denver (In re Peregrine, Entertainment, Ltd.),* 116 B.R. 194 (C.D.Cal.1990).

*Avalon*, 209 B.R. at 521. Because the *Peregrine* court based its priority determination on 17 U.S.C. § 205(d), by citing to both state law and *Peregrine*, the *Avalon* court also failed to make clear whether it was basing its priority analysis on state or federal law.

However, as discussed above, 17 U.S.C. § 205(d) does not establish a priority scheme between conflicting transfers of interests in an unregistered copyright. Therefore, the relative priorities of the Bank's security interest and the interest of Aerocon as a hypothetical judicial lien creditor under 11 U.S.C. § 544(a)(1) must be governed by Article Nine of the California Commercial Code. As stated above, whether Aerocon can avoid the Bank's security interest under the California Commercial Code depends on whether the Bank's security interest was properly perfected by filing a UCC–1 with the UCC Office.

## B. PERFECTION OF SECURITY INTEREST IN UNREGISTERED COPYRIGHT

The *Peregrine* court concluded that a security interest in a copyright could only be perfected in accordance with the Copyright Act. However, as noted above, it did not specify whether the copyright in question was registered with the Copyright Office. Its conclusion appears sound only as applied to a registered copyright.

The *Peregrine* court based its analysis on two grounds. First, it concluded that 17 U.S.C. § 205(c) preempted the perfection provisions of the Copyright Act. See section (1) below. Second, it concluded that section 9302(3)(a) of the Commercial Code precluded perfection of a security interest in a copyright by filing a UCC–1 financing statement with the UCC Office. See section (2) below. As discussed below, neither ground justifies this conclusion when the copyright is unregistered. The Court concludes that a security interest in an unregistered copyright may be perfected by filing a UCC–1 financing statement with the UCC Office. Thus, the Bank's security interest is perfected and may not be avoided by Aerocon under 11 U.S.C. § 544(a)(1).

### (1) Preemption.

■ As noted above, the *Peregrine* court based its conclusion that a security interest in a copyright could only be perfected by recordation in the Copyright Of-

---

10. In fact, the *AEG Acquisition* court misstated the priority scheme established by 17 U.S.C. § 205(d) as giving priority to a transferee who records first. As discussed above, priority is given to the first transfer executed as long as that transfer is recorded in a manner sufficient to give constructive notice within 30 (or 60) days of the date of execution of the transfer. *See* 17 U.S.C. § 205(d).

fice primarily on the doctrine of federal preemption. In this context, the *Peregrine* court stated as follows:

> Even in the absence of express language, federal regulation will preempt state law if it is so pervasive as to indicate that "Congress left no room for supplementary state regulation," or if "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." [Citation and footnote omitted] Here, the comprehensive scope of the federal Copyright Act's recording provisions, along with the unique federal interests they implicate, support the view that federal law preempts state methods of perfecting security interests in copyrights and related accounts receivable.

116 B.R. at 199. However, the Copyright Act's recording provisions are not comprehensive as applied to an unregistered copyright. They contain no means by which a security interest in an unregistered copyright may be perfected.

■ As the *Peregrine* court recognized, federal law preempts state law only to the extent that it contains provisions that govern the rights of the parties. *See id.* at 203. Section 9104 of the California Commercial Code provides a "voluntary step back" of state law governing security interests only "to the extent [federal law] governs the rights of [the] parties." *See id.* As stated in Official Comment § 1 to Uniform Commercial Code § 9104, "...[the Federal Copyright Act] would not seem to contain sufficient provisions regulating the rights of the parties and third parties to exclude security interests in copyrights from the provisions of ...[Article 9]." *See id.* at 203 n. 11. Since federal law provides no means by which a security interest in an unregistered copyright may

be perfected, that means must be supplied by state law.

The *Peregrine* court also based its conclusion that the Copyright Act preempted state law methods of perfection of security interest in copyrights on policy grounds. It rejected the secured creditor's contention that Article Nine of the Uniform Commercial Code and the Copyright Act provided "parallel" perfection schemes. The court stated that:

> A recording system works by virtue of the fact that interested parties have a specific place to look in order to discover with certainty whether a particular interest has been transferred or encumbered. To the extent there are competing recordation schemes, this lessens the utility of each; when records are scattered in several filing units, potential creditors must conduct several searches before they can be sure that the property is not encumbered. [Citations omitted.] It is for that reason that parallel recordation schemes for the same types of property are scarce as hens' teeth;....

*Id.* at 200.

However, permitting a security interest in an unregistered copyright to be perfected by filing a UCC–1 financing statement with the UCC Office does not create a parallel or competing recordation scheme. Rather, the UCC recordation scheme serves as a supplement or backup to the Copyright Act recordation scheme. If a copyright is registered, recordation in the Copyright Office is the only effective method by which to perfect the security interest. Only if a copyright is unregistered does filing a UCC–1 financing statement with the UCC Office perfect the security interest.[11]

Parties conducting searches for encumbrances on copyrights would not be unduly

---

11. Granted, perfection in this manner would be vulnerable to invalidation if a copyright were later registered and a competing security interest in the copyright had been recorded in the Copyright Office. For that reason, a prudent secured creditor would record its security agreement in the Copyright Office at the same time it filed its UCC–1 financing statement in the UCC Office.

burdened by this supplementary or backup recordation scheme. A party wishing to determine whether a copyright was encumbered would first search the Copyright Office. If the copyright was registered, the party need search no further. Only if the copyright was unregistered, would the party need to search the UCC Office. This burden seems slight compared to depriving a secured creditor of any means of perfecting its security interest.

■ "Federal law preempts state law when state law 'conflicts with federal law, would frustrate a federal scheme, or where Congress clearly intended to occupy the field. *Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir.1999).'" *In re Cybernetic Servs., Inc.*, 239 B.R. 917, 920 (9th Cir. BAP 1999). Congress has clearly not indicated an intention to occupy the field of a secured creditor's rights with respect to a copyright. *See Peregrine*, 116 B.R. at 203 n. 11. The Copyright Act contains no express provision prohibiting a secured creditor from perfecting its security interest in an unregistered copyright in accordance with state law. Therefore, the filing provisions of Article Nine of the Commercial Code do not conflict with federal law.

Finally, as discussed above, the Court does not believe that permitting a secured creditor to perfect its security interest in an unregistered copyright by filing a UCC–1 financing statement with the UCC Office frustrates any federal policy reflected in the Copyright Act. Therefore, the Court concludes that the doctrine of federal preemption does not prevent a secured creditor from perfecting its security interest by filing a UCC–1 with the UCC Office.

**(2) Section 9302(3)(a) of the California Commercial Code**

■ The *Peregrine* court also based its conclusion that a security interest in a copyright could only be perfected by recording the security agreement in the Copyright Office on section 9302(3)(a) of the California Commercial Code. Section 9302(3)(a) provides as follows:

> The filing of a financing statement otherwise required by this division is not necessary or effective to perfect a security interest in property subject to . . . :
>
> (a) A statute or treaty of the United States which provides for a national or international registration or a national or international certificate of title or which specifies a place of filing different from that specified in this division for filing of the security interest.

Cal. Com.Code § 9302(3)(a). The *Peregrine* court read this provision to apply to the perfection of a security interest in a copyright because "the Copyright Act provides for national registration and 'specifies a place of filing different from that specified in [Article Nine] for filing a security interest.'" *See* 116 B.R. at 203.[12]

The Court finds section 9302(3) ambiguous. Read literally, its effect would be absurd. It would provide that, whenever a particular type of collateral may be registered nationally, regardless of whether the federal statute specifies a place for filing a security interest different than that provided by the UCC, filing a UCC–1 financing statement would be neither necessary nor effective to perfect a security interest in the collateral.[13] An example of such a

---

**12.** The Court notes that, in purporting to apply the plain language of section 9302(3)(a), the *Peregrine* court replaced the word "or" in the statute with the word "and." In other words, section 9302(3)(a), read literally, states that filing a UCC–1 financing statement will not perfect a security interest when a federal statute *either* provides for national registration of the property *or* specifies a different place for filing a security interest. The *Pereg-*

rine court reads section 9302(3)(a) to preclude perfection by filing a UCC–1 financing statement only when the federal statute contains both provisions.

**13.** It is also unclear whether the word "provide" means "permit" or "require." If "provide" means "require," the statute would not refer to copyrights at all since a copyright is not required to be registered except as a pre-

federal statute is the Patent Act. *See* 35 U.S.C. §§ 1–376. In *Cybernetic Servs.*, the Ninth Circuit Bankruptcy Appellate Panel declined to apply section 9302(3)(a) in this literal manner. *See* 239 B.R. at 917. The panel noted that:

> Official Comment 8 to UCC 9–302 refers to three specific federal statutes that provide a filing system adequate to supersede the Article 9 filing system for perfection of security interests: 17 U.S.C. §§ 28, 30 (copyrights), 49 U.S.C. § 1403 (now § 44107) (aircraft), and 49 U.S.C. § 20(c) (now § 11301) (railroads). [Footnotes omitted.] Each of those statutes clearly includes the filing of security interests within their scope, each requires that a security interest be filed within the applicable registry to obtain priority and perfection of a security interest, and each provides that a filing provides constructive notice of the security interest.

> In contrast, the Patent Act is not sufficiently comprehensive to exclude state methods of perfecting security interests in patents. The Patent Act does not include security interests within any of the scope or definition provisions.

*Id.* at 923.

■ The Court agrees with the *Cybernetic Servs.* court that section 9302(3)(a) is ambiguous and may not sensibly be applied in accordance with its plain language.[14] Consistent with the panel's rationale, since the Copyright Act provides no means of perfecting a security interest in an unregistered copyright, the Court concludes that section 9302(3)(a) does not preclude perfection by filing a UCC–1 financing statement with the UCC Office.

## CONCLUSION

For the reasons stated above, the Court concludes that, when a copyright is unreg-

istered, a secured creditor may perfect its security interest by filing a UCC–1 financing statement with the UCC Office. Since the Bank did so, the Bank's security interest is perfected. As a result, Aerocon is not entitled to avoid the Bank's security interest pursuant to 11 U.S.C. § 544(a)(1). Counsel for the Bank is directed to submit a proposed form of order in accordance with this decision.

---

requisite to bringing a copyright infringement suit. *See* 17 U.S.C. §§ 408, 411.

**14.** When the plain language of a statute produces a result demonstrably at odds with its apparent purpose, it should not be interpreted in that manner. *See In re Catapult Entertain-*

*ment, Inc.,* 165 F.3d 747, 754 (9th Cir.1999)(holding that plain language did not create absurd result); *see also In re Century Cleaning Services, Inc.,* 195 F.3d 1053 (9th Cir.1999).